ARNOLD H. THUMAN, PLAINTIFF IN ERROR, V. BERTHA M. THUMAN, DEFENDANT IN ERROR.

13 N. W. 2d 117

FILED FEBRUARY 4, 1944. No. 31743.

*Morrow & Miller,* for plaintiff in error.

*Mothersead & Wright, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, YEAGER, CHAPPELL and WENKE, JJ.

SIMMONS, C. J.

This is a contempt proceeding. Plaintiff in error will be referred to herein as the defendant. The defendant has not complied with the alimony provisions of a divorce decree. The district court for Scotts Bluff county ordered the defendant confined in jail until he purged himself of contempt. He prosecutes error here advancing generally two contentions to wit: The sufficiency of the affidavit to confer jurisdiction in the contempt proceedings and the sufficiency of the evidence to sustain the finding of the ability of the defendant to pay. We affirm the judgment of the trial court.

May 7, 1941, in an action entitled Bertha M. Thuman, plaintiff, v. Arnold H. Thuman, defendant, the district court for Scotts Bluff county entered a decree granting the

plaintiff an absolute divorce, the custody of two minor children, aged six and two years, and decreed the ownership of personal property. The defendant was ordered to pay plaintiff temporary alimony, then in default, attorney's fees, and $10 a week for the support of the plaintiff and said children.

Basing its action on a supplemental petition, answer, reply and evidence taken, the court on April 16, 1942, entered a decree finding that defendant was unemployed when the original decree was taken, that he was, as of the date of the second hearing, employed at $175 a month, and that he was in default of payments under the original decree. It was ordered that he should forthwith pay the delinquent alimony and thereafter pay the plaintiff alimony at the rate of $75 a month. An appeal was not taken from this decree.

July 30, 1943, the plaintiff filed her affidavit reciting that defendant was in default of payments under both decrees, setting out the amounts and "That the defendant is of sufficient means and ability to make said payments and that the failure and refusal to pay the same are intentional, wilful, unlawful and contemptuous" and praying that the defendant be cited to answer and show cause why he should not be punished for contempt. On the same day defendant filed his answer and petition for modification of the decree in which he set out that he had paid the costs and attorney's fees and alimony at the rate of $10 a week since the original decree; denied that he had the ability or means to pay more, alleged that on January 1, 1943, his salary had been increased to $200 a month; that he had remarried, that with the deduction of many taxes, expenses of an automobile, cost of maintaining a home and costs of living it was "utterly impossible" for him to pay more than $10 a week alimony. The plaintiff filed her reply and the matter went to hearing on July 30, 1943.

The trial court found the defendant to be in default in the sum of $495.70, that the defendant was of sufficient means and ability to make the payments, that his refusal to do so was intentional, wilful, unlawful and contemptuous and that defendant was in contempt and ordered defendant confined

in the county jail until he purged himself of the contempt. The trial court refused to modify the decree of April 16, 1942, holding that the evidence showed an increased ability to pay since the decree was entered. A motion for new trial was made and overruled. Defendant served notice of an intent to prosecute error to this court and furnished a recognizance in the sum of $1,000 conditioned that if in the proceedings in error the judgment is affirmed he will perform the judgment and sentence of the court.

Defendant contends first that the affidavit of plaintiff was insufficient to confer jurisdiction upon the court to punish for contempt for the reason that it failed to allege that defendant's failure to pay "was without just cause." This issue was not presented to the trial court, and the affidavit was there treated as sufficient.

Defendant relies upon *Wright v. Wright,* 132 Neb. 619, 272 N. W. 568, and *Thomas v. Thomas,* 132 Neb. 827, 273 N. W. 483. In the *Wright* case it was said: "While the strict rules applicable to criminal cases do not apply in this proceeding, the affidavit upon which the action is based should have stated facts which, if proved, would constitute a 'civil' contempt. This it does not do. The only allegations material to the case are that an order was made and that the defendant failed to comply with the order. A party is not in contempt of court for a failure to comply with an order to pay alimony unless it is shown that he had sufficient ability to pay and that his refusal was wilful and contumacious and without just and reasonable ground."

Does the absence of an allegation that the failure to pay was "without just cause" (from the syllabus) or "without just and reasonable ground" (from the opinion in the *Wright* case) render the affidavit insufficient to confer jurisdiction on the court?

The decisions point out the elements that constitute the constructive civil contempt in this class of cases. Generally the allegations that should appear in the affidavit are an allegation of the order of the court and the defendant's failure to comply with the order, that his failure to do so is

without just cause and wilful. The language of the decisions does not call for a worship of words in the drafting of the affidavit.

In the *Wright* case, as is there pointed out, the only allegation was the order of the court and the defendant's failure to comply with it. The *Wright* case rests upon *Hawthorne v. State,* 45 Neb. 871, 64 N. W. 359. There the affidavit was held faulty for two reasons. It did not allege that the plaintiff had the power to comply, nor did it allege that he had property which could be applied to the payment of the judgment against him. The same reason plus the absence of an allegation that the failure to pay was wilful and contumacious caused the holding that the affidavit was fatally defective in the *Thomas* case. The failure to allege "without just cause" is not mentioned as a reason for dismissal in any of the cited cases.

Here plaintiff, by her affidavit, alleged the two decrees and the failure of the defendant to make the required payments. She alleged that the defendant was "of sufficient means and ability to make said payments," and that "the failure and refusal to pay the same are intentional, wilful, unlawful and contemptuous." "The rule generally favored is, that a substantial and general statement will suffice to give the court jurisdiction to proceed * * * ." 13 C. J. 66. See 17 C. J. S. 91. In *Nebraska Children's Home Society v. State,* 57 Neb. 765, 78 N. W. 267, and in *Kammer v. State,* 105 Neb. 224, 180 N. W. 39, we held that the failure to use the word "wilful" in an information in contempt did not require a holding that the information was "bad" where the facts stated clearly charged a wilful disobedience. So here the facts stated, together with the quoted statements, must be held to assert that the failure to pay was without just cause, the procedure being "remedial to compel obedience to a judicial order." *Kammer v. State, supra.* This is particularly so in view of the fact that the defendant so construed the affidavit, did not challenge its sufficiency in the trial court and joined issue by pleading facts which he asserted showed it was "utterly impossible for him to pay more" than he had been paying.

Defendant states the issue to be determined here as follows: "whether or not the defendant was able to pay more than he actually paid * * * and wilfully and contemptuously failed and refused to do so."

When the original decree was entered defendant was unemployed. The alimony payments were fixed at $10 a week. He became employed September, 1941, at $175 a month. He did not meet all of the payments required by the original decree. He resisted the petition for additional alimony on the ground that $10 a week was the maximum he could pay regularly "and be assured of making said payments when due." The court on April 16, 1942, increased the alimony payments to $75 a month and ordered him to pay "forthwith" all sums theretofore adjudged against him. The amount of the delinquencies does not appear. Apparently since that time he has paid the $10 a week, has not paid more, and had accumulated as of July 30, 1943, a delinquency of $495.70. Defendant calculates the $10 weekly payments to equal $43.33 a month which he has been paying. His delinquencies then amount to $31.67 a month. It is only this increased amount which he says he is unable to pay. Indefinitely and by approximations and averages he accounts for the expenditure of his entire salary.

Before his remarriage he lists his expenditures as in excess of his salary. Here he includes $39.39 a month as payment and expense on a car used for both business and pleasure. He lists an insurance premium on a policy then payable to his first wife, he lists other items of personal expenditures. For the period from June 1, 1942, to January 1, 1943, he shows expenditures over $30 each month in excess of his income. This is made up by an increase of $29.50 for rent and telephone, by doctor bills and a decrease in laundry and cleaning bills. Although he admitted on the witness stand that the financing charges on his car were "cleaned up" before the end of the year, he continues them in his tabulations as an expense up to January 1, 1943.

Beginning January 1, 1943, he had an increase in pay of $25 a month. He made a new loan on his car payable $10 a

month—so that roughly he had an increase in income and decreased outgo resulting in a net gain of $40 a month. During this period he submits he was just able to break even.

On the witness stand defendant admitted that during the period from January to June, 1943, he had obligations other than his own. He does not list these payments in his expenditure items. He testified to a total indebtedness of $110 and lists in his brief figures which show that he has no property and had accumulated deficits of over $200 in the last half of 1943. He does not show what value he may have in either his insurance or his car. His attitude is shown by his answer to the question "Yet you made no effort to pay more than $10 a week on this alimony, did you?" And he answered "Yes, I did, but I just was being bothered, and one thing and another I just couldn't honestly pay any more; just didn't have any left." The net of all this is that the defendant comes into court and seeks to justify his failure to comply with the decree by saying after I have paid all my other bills and spent what I felt the situation required, I just "didn't have any left" to pay more on alimony.

His expenditures for rent and insurance alone arising from his second marriage more than equal the monthly delinquencies. Remarriage does not relieve the defendant from the obligations fixed by the alimony decree. The first wife and children have first consideration. *McIlwain v. McIlwain,* 135 Neb. 705, 283 N. W. 845. The sum saved on car payments and increased pay, more than equal his delinquent payments. By his pleadings here he has admitted an ability to pay $10 a week under his former salary and expense. He has shown no reason why he cannot comply with the court's order. This record shows that defendant has had a fixed, deliberate purpose not to pay more than $10 a week alimony and to ignore the decree of April 16, 1942. He has persisted in that purpose. The record fully sustains the finding of the trial court in the contempt proceeding and it is affirmed.

AFFIRMED.