BARBARA J. HALVERSON, APPELLEE, V. ROBERT J. HALVERSON, APPELLANT.
203 N. W. 2d 452

Filed January 12, 1973. No. 38535.

James E. Schneider, for appellant.

Murphy, Pederson & Piccolo, for appellee.

Heard before SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

Defendant appeals a 30-day jail sentence on a finding of contempt for failure to comply with the district court's order to pay child support and costs. We reverse.

The decree of divorce entered December 6, 1968, approved a property settlement agreement providing that defendant pay $50 per month for each of three children: Shirley, then age 16; Trudy, age 5; and Robert J., age 3. Shirley married and left the home in June 1970. The affidavit for citation for contempt of court, filed September 1, 1971, alleged defendant was in arrears on child support payments in the approximate amount of $4,150 and court costs of $276. Defendant filed a joint answer and an application for modification of the support decree.

Hearing was held on March 6, 1972. Counsel for both the parties understood the hearing would embrace the application for modification as well as the citation

for contempt. Counsel did not make opening statements. The trial court assumed because no answer had been filed to the application for modification that only the contempt proceeding was being tried. It was not until both parties rested that he learned they had assumed the application for modification was also being heard.

From the date of the divorce decree to the filing of the citation for contempt the child support payments total $4,250. The decree allowed plaintiff an attorney's fee of $250 and costs of $26, making a total of $4,526. Of this amount plaintiff concedes that she has received $3,100. This leaves a balance due on child support and costs at the time of the filing of the affidavit for contempt of $1,426.

Plaintiff is a lab technician at Sutherland Hospital, earning $450 per month. She remarried October 2, 1971, to her present husband. Defendant, who is 41 years of age, remarried January 17, 1971. At the time of this marriage his present wife had two children, 8 and 10 years of age. Defendant owns no property except a 1965 Chevrolet Impala, mortgaged to a finance company for $700, which had been set off to him in the divorce decree.

Defendant was hospitalized in the Veterans Administration Hospital in Denver, Colorado, in the fall of 1970, for a period of 1 month. His disability appears to be a paralysis problem producing numbness in the right hand, right leg, and knees. He was again hospitalized in the fall of 1971 for at least 30 days for the same disability. Exhibit 2, a letter from a doctor at the Veterans' facility, reads as follows:

"Mr. James E. Schneider    In reply
P. O. Box 865    refer to:  554:112
306 West 4th Street    HALVERSON, Robert J.
North Platte, Nebraska 69101 506 26 71 24
    C 17 602 717

"Dear Mr. Schneider:

"This is just a brief note concerning Mr. Halverson's medical condition.

"As you know, Mr. Halverson was seen, examined, and extensively studied at the Veterans Administration Hospital, Denver, Colorado, on two separate occasions, the date of his last discharge being October 6, 1971. The exact diagnosis in this patient is impossible, although we are certain that he has a progressive, neurologic disease, resulting in a permanent disability of approximately 50%. The disability consists of marked weakness in the right arm and right leg, with a specific weakness in the fingers of the right hand. Although it is difficult to say, as I mentioned previously, the etiology of this neurologic problem, we are fairly certain that this will be slowly progressive in nature. I wish I could be more specific concerning the exact diagnosis, but it is impossible at this time to do so.

"We are going to re-evaluate Mr. Halverson during the early part of 1972 and hopefully we will have more information at this time.

"Sincerely yours,
David A. Thompson, M. D. (sgd.)
DAVID THOMPSON, M. D."

Defendant, who has a seventh-grade education, has spent most of his employed years as a truck driver, although on occasion he has worked at digging ditches and at common labor. During the year 1971, he earned $1,885.37 as a truck driver. When he entered the hospital in September 1971, his present family was given an ADC grant by the Lincoln county welfare department in the amount of $144.50. Upon his return home he was given a disability grant from welfare of $33.75 for December 1971, and January 1972. This grant was discontinued when he was transferred to the Vocational Rehabilitation Service in January 1972.

At the time of the hearing defendant was driving a truck owned by Cliff Hagan, under an arrangement by

which he was to use all earnings to license the truck, pay on the back payments due on the truck, and keep up the current payments. The agreement provided when the payments were current he would then receive anything remaining over payments and expenses. On the basis of this arrangement the Vocational Rehabilitation Service made a maintenance grant to defendant of $196 per month, expiring June 30, 1972. This was done in the hope that he could earn enough with the truck by that time to bring the truck payments current and thereafter provide for his own needs.

The plaintiff herein was receiving ADC payments before her present marriage. These payments were terminated when a brother of the defendant died, and the children as insurance beneficiaries received an amount in excess of ADC qualification requirements. The record would indicate that the defendant was current on his child support payments until he entered the hospital in 1970.

Contempt proceedings are in their nature criminal, and no intendments will be indulged in to support a conviction. Frye v. Frye (1954), 158 Neb. 694, 64 N. W. 2d 468. When plaintiff rested defendant moved to dismiss the citation on the grounds that there was no proof beyond a reasonable doubt that the defendant had the ability to pay the support required of him. The plaintiff adduced no evidence on that question. There was no showing as to whether or not the defendant had the ability to work or whether out of earnings or profits he was able to make the payments required. Defendant's motion should have been sustained at that stage.

The evidence now in the record on the earnings and the ability of the defendant to make the payments required was adduced by the defendant. The rule is well settled in this jurisdiction that before a person may be said to be in contempt of court for failure to pay amounts fixed in a decree of divorce for the support of

children, the evidence must disclose not only the failure to comply with the decree but also that the failure was willful. Frye v. Frye (1954), 158 Neb. 694, 64 N. W. 2d 468.

We reverse the conviction for contempt and remand the cause to the trial court for hearing on the application for modification of the child support payments. Considering the fact that both parties have remarried, we direct attention to section 28-446.03, R. S. Supp., 1972, which became effective May 13, 1971.

REVERSED AND REMANDED.

WHITE, C. J., participating on briefs.