DOROTHY M. MALEC, APPELLEE, v. JERRY P. MALEC, APPELLANT.

244 N. W. 2d 82

Filed July 14, 1976.   No. 40532.

Thomas P. Leary, for appellant.

Lathrop & Albracht, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

The respondent, Jerry P. Malec, was found guilty of willful contempt of a temporary restraining order in a divorce proceeding and sentenced to 30 days in the county jail.

Dorothy M. Malec and Jerry P. Malec were married July 11, 1973.  On May 8, 1974, Dorothy filed a petition

for dissolution of marriage against Jerry, the respondent. On June 25, 1975, a second amended and supplemental petition was filed. It alleged, among other things, that the respondent was providing the petitioner with a rental car from Custom Leasing, Inc., and requested that he be restrained and enjoined from disturbing petitioner's possession of the automobile. The respondent filed his answer on July 8, 1975, joining in the prayer for the dissolution of the marriage but alleging that the petitioner was not entitled to maintenance, alimony, or property division because of the terms of an antenuptial agreement, a copy of which was attached to the pleading.

On the 8th day of October 1975, the petitioner filed a verified application alleging that respondent had sold petitioner's car for $1,000 and kept the money, and to replace it, a 1973 Datsun automobile had been leased by respondent for petitioner's use; that respondent had stopped making the lease payments on the vehicle; and had insisted that the leasing company capture the car and turn it over to him. She prayed for a restraining order "restraining and enjoining the respondent from disturbing her possession and custody of the 1973 Datsun." The District Court on that date entered its ex parte temporary order accordingly. The court set hearing on the order for October 16, 1975. On hearing the court continued the temporary order in effect, and ordered that the respondent be "restrained and enjoined from disturbing the petitioner's possession and use of the 1973 Datsun 240Z automobile or causing her possession and use of said automobile to be disturbed in any way."

The evidence shows without dispute that the Datsun automobile was leased by Custom Leasing, Incorporated, to Malco Engineering Co., Inc., on July 6, 1973. Malco Engineering Co., Inc., is a corporation, the stock of which is owned by the respondent husband, who is its president. In September 1975, the monthly lease pay-

ments for August and September 1975, of $152.95 each were delinquent, and the total balance still due Custom Leasing on the lease was $1,690.

About September 27, 1975, petitioner's counsel tendered a check for $500 to Custom Leasing to bring the lease payments up to date, but, on advice of Custom Leasing counsel, it was returned. In September 1975, the respondent made arrangements to obtain a loan of $3,600 from North Side Bank on the Datsun automobile. The loan was made October 20, 1975, by the bank by a bank check which was valid only if the car title was attached. On October 20, 1975, Malco Engineering Co., Inc., through Malec, the respondent, paid Custom Leasing, Incorporated, the balance due on the Datsun lease of approximately $1,700, and received the title from Custom Leasing. The title received and attached to the North Side Bank check was in the name of Malco Engineering Co., Inc. Malec also paid off other leases from Custom Leasing covering equipment used in the Malco plant in the amount of $1,139.67, and received title to them. There is no evidence as to the use made of the balance of the $3,600 loan from North Side Bank. The North Side Bank lien on the Datsun was recorded on October 21, 1975. On November 19, 1975, the respondent advised the North Side Bank that he was unable to make the payments on the Datsun loan and told the bank where the car could probably be found. During all the times mentioned the car had been continuously in the possession of the petitioner wife. The North Side Bank repossessed the automobile from a parking lot on November 19, 1975.

On November 24, 1975, the petitioner filed an application for an order to show cause why the respondent should not be punished for contempt for deliberate and willful disregard of the order restraining and enjoining him from disturbing the petitioner's possession and use of the Datsun automobile. On December 9, 1975, hearing was held on that application. The evidence affirm-

atively established that respondent had paid the petitioner the $1,000 sale price for her original car, and that the $1,000 had been deposited in petitioner's personal bank account. That evidence flatly contradicted specific allegations of the petitioner in her application for the restraining order. It should be noted also that the evidence at the hearing as to the financial condition of the respondent and the Malco Company was uncontradicted.

Malco Engineering Co., Inc., was a production machine shop for the manufacture of airline components and air valves. It had lost $35,000 over the preceding 2 years. Its October 31, 1975, balance sheet showed no cash, but only accounts receivable and inventory in current assets. Attempts to sell it for many months had been unsuccessful. The stockholders equity of some $41,000 in the balance sheet was obviously speculative, and the tangible property and equipment of the company was mortgaged to banks or other creditors. The principal creditor, who held the mortgage on the machinery and equipment, had refused any additional loans. Stockholders, presumably respondent, had previously loaned the company over $53,000. The company owed the Internal Revenue Service on withholding and social security taxes approximately $12,000.

Respondent's personal finances reflected the condition of his company. Respondent had drawn no salary from the company for about 3 years. Any automobiles or recreational equipment used by the respondent were owned by the company and encumbered by mortgages or liens. Respondent's only personal income was $52 a month from an annuity. He had borrowed money from the business, but his apartment rent of $205 a month was a month and a half delinquent. The joint income tax return of the petitioner and respondent for 1974 disclosed total gross income of $12,479, of which $12,241 was the wife's salary.

The District Court found the respondent guilty of a willful violation of the restraining order and sentenced

him to 30 days in the county jail. This appeal followed. Initially, there is a serious question as to the court's power and authority to enter an order with respect to property which was not the property of either party to the divorce action, but even aside from that issue, it is obvious that the contempt conviction here must be reversed.

It has long been established in this state that contempt proceedings are in their nature criminal and no intendments will be indulged in to support a conviction. Halverson v. Halverson, 189 Neb. 489, 203 N. W. 2d 452.

As early as 1937, we held that strict rules of construction applicable to criminal proceedings are to govern and that: " 'The affidavit must state the acts of the asserted contempt with as much certainty as is required in a statement of an offense in a prosecution of a crime.' " Thomas v. Thomas, 132 Neb. 827, 273 N. W. 483. In the case before us, the language of the order simply restrained the respondent from doing any affirmative act which would cause the petitioner's possession and use of the car to be disturbed. It did not require the respondent to make any payment on any contract. In a contempt proceeding for disobedience of an order, language of duty in the order is not expandable beyond a reasonable interpretation in light of the purposes for which the order was entered. Drake v. Drake, 183 Neb. 677, 163 N. W. 2d 598. No reasonable interpretation can expand the order here to require respondent to make any payments on any car loan or contract.

Even if the restraining order here could be reasonably interpreted to require the respondent to make the car payment involved, his failure to do so must still be willful. The rule is well settled in this state that before a person may be said to be in contempt of court for failure to comply with a restraining order, the evidence must disclose not only the failure to comply with the order but also that the failure was willful. Halverson v. Hal-

verson, *supra*; Frye v. Frye, 158 Neb. 694, 64 N. W. 2d 468.

A party is not in contempt of court for a failure to comply with an order directing him to pay money unless it is shown that he had sufficient ability to pay, and that his refusal was willful, contumacious, and without just and reasonable grounds. Wright v. Wright, 132 Neb. 619, 272 N. W. 568. The evidence here is uncontradicted that the respondent was financially unable to make the car payment and his failure was therefore not willful.

The conviction and sentence of the respondent for civil contempt was arbitrary and erroneous. The judgment is reversed and the proceedings for contempt dismissed.

JUDGMENT REVERSED. CONTEMPT PROCEEDINGS DISMISSED.