ROBERTA I. SEMPEK, APPELLEE, V. LAWRENCE J. SEMPEK, APPELLANT.

252 N. W. 2d 284

Filed April 13, 1977. No. 40858.

David J. Cullan of Cullan & Cullan, for appellant.

Mary P. Clarkson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, MC-COWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

Lawrence J. Sempek appeals a sentence of 30 days

imprisonment in the Sarpy County jail imposed upon him by the District Court for Sarpy County, which found him to be in contempt of court for failure to comply with a decree of dissolution of marriage, ordering him to pay and to hold the appellee, Roberta I. Sempek, harmless from all debts incurred prior to the filing of the petition for dissolution between the parties. We affirm.

In his appeal to this court from that finding and sentence, Lawrence makes only two assignments of error. First, he alleges that there was a total lack of evidence to support his conviction and sentence for contempt. Secondly, he alleges that the decree in the dissolution proceedings did not impose upon him the duty for the breach of which he was found in contempt; and the decree contained no order for him to pay the debts incurred during the marriage or to hold his ex-spouse harmless therefrom. We consider the latter assignment of error first.

In the decree of dissolution entered November 21, 1975, the court found, among other things, that the parties had entered into a property settlement and alimony agreement and that the agreement was fair and reasonable; and incorporated the agreement into the decree. The court also ordered and adjudged in the decree: "That the property of the parties be awarded to the respective party pursuant to their property settlement agreement." The property settlement and alimony agreement referred to, a copy of which was attached to the decree, not only assigned property to the petitioner and the respondent, respectively, but also contained provisions for the payment of attorney's fees. Paragraph V, entitled "Debts," specifically provided: "Respondent shall pay and hold harmless the Petitioner of all debts incurred prior to the filing of the Petition for Dissolution." Although the court did not specifically mention the payment of the marital debts in the ordering and adjudging portion of the

decree, it did find that the property settlement agreement between the parties was fair and reasonable, and incorporated the settlement into the decree, and did order and direct that the property of the parties be awarded to the respective parties pursuant to their property settlement agreement. We think the intention of the court was clearly manifested by its actions in that regard. There is no claim on the part of the appellant that he did not know or fully understand what he was required to do under the terms of the voluntary property settlement agreement entered into by him; and we therefore hold that under the terms of the decree of dissolution, he was obligated to hold his wife harmless from the payment of the marital debts existing at the time of the filing of the petition. Appellant's claim to the contrary is without merit.

We now consider appellant's first assignment of error that there was a lack of evidence to support his conviction for contempt and sentence imposed thereon. It is true, as reflected by the record, that at the hearing on the contempt charge, following the filing of an affidavit for that purpose by Roberta, there was no formal evidence introduced in the nature of testimony from witnesses sworn under oath for that purpose. The entire hearing appears to have been conducted in the nature of an informal dialogue and arguments between the respective attorneys, and between the court and the attorneys. The affidavit of contempt which was filed in the court to commence the proceedings was called to the attention of the court, but was not introduced in evidence at the hearing. However, the court stated that the affidavit made a prima facie case of contempt and placed the burden on Lawrence to proceed.

The attorney for the appellant, Lawrence, at that time, pointed out that Mr. Sempek had been trying to straighten out the situation with the creditors; that Sempek realized he had an obligation to take

care of the debts, and had been hoping to obtain a call for employment from his union, but realized that he would have to make other efforts; that he had attempted to obtain a job at the Holiday Inn as a bookkeeper but did not have the educational background; and that he had started a new job that day driving an ambulance. He hoped to be able to keep that job until the following summer when there would be more construction work available for laborers. Lawrence' attorney also told the judge at that time that his client had no property, and had debts approximating $9,000, which he was in process of discharging in bankruptcy. He also pointed out that his client had made efforts to meet his responsibilities, and had been able to obtain approximately $2,000 to pay off an indebtedness on his former wife's automobile.

Counsel for Roberta also pointed out to the court that they had had litigation in three different courts over the debts of the parties; that Mr. Sempek did not have to support anyone other than himself; that he was a single individual and was living at home with his parents; that he was 25 years old, strong and able-bodied; that her client desired protection from further harassment by the creditors; and finally that Mr. Sempek did not seem to realize that he had obligations and must meet them.

At the end of the final comments by counsel for Roberta, the court made the following statement to appellant's counsel: "Any rebuttal, Mr. Troia? Is the matter submitted to the Court? Mr. Troia: Yes, your honor." The court then stated: "Let the record show that this decree was entered on the 13th day of November — rather, the property settlement was entered on that date. The decree was entered on the 21st day of November. And the evidence shows that the respondent has not complied to the decree, and the Court, from the evidence and the testimony, does find him in contempt of court. It is

the order of this Court that the respondent be sentenced to thirty days in Sarpy County Jail.'' The court then suspended the execution of the sentence for 30 days to afford Lawrence an opportunity to purge himself of contempt but specifically provided that at the end of 30 days, if he had not complied with the court's order, then he would serve his 30 days in the jail for contempt.

Although it is true, as previously stated, that no sworn testimony was received by the court at the contempt hearing, nevertheless, it might well be argued that counsel for the parties agreed that the testimony relative to the alleged contempt might be presented to the court by way of their oral statements. This is substantiated, it seems, by the inquiry of the court, immediately preceding the pronouncement of its decision, as to whether Mr. Troia had anything further to present in rebuttal, or whether he submitted the matter to the court, and his answer that it was.

Counsel for Roberta also contends that the statements made by the attorney for Lawrence during the contempt hearing amounted to judicial admissions which supplied any lack of formal evidence, and that those admissions contained in the statements of Lawrence' attorney were sufficient to sustain the action of the court in finding him guilty of contempt. A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true. Savorelli v. Stone, 168 Neb. 419, 96 N. W. 2d 222 (1959); Vermaas v. Heckel, 170 Neb. 321, 102 N. W. 2d 647 (1960). Assuming, without deciding, that the statements made by counsel for Lawrence at the contempt hearing did in fact amount to judicial admissions, as claimed by counsel for Roberta, there would, it appears, still be a

serious question as to whether those statements were sufficient to establish a violation of the decree of the court on the part of Mr. Sempek under the circumstances, so as to justify the finding of contempt entered by the court. However, for reasons hereinafter stated, we are not permitted to make a determination as to the sufficiency of evidence under the facts of this case.

Lawrence was found to be in contempt of court and sentenced on April 27, 1976. Shortly thereafter he secured the services of a new attorney. That attorney, who was retained on May 13, 1976, filed two motions on May 18, 1976, one of these motions being a motion for a new trial, which was heard on May 21, 1976, and overruled. Section 25-1143, R. R. S. 1943, provides that an application for a new trial must be made within 10 days, either within or without the term, after the verdict, report, or decision was rendered, ''except (1) where unavoidably prevented, * * *.'' We recognize that in cases of direct contempts committed in the presence of the court, no motion for new trial is required. See, Crites v. State, 74 Neb. 687, 105 N. W. 469 (1905); Muffly v. State, 129 Neb. 334, 261 N. W. 560 (1935). In such cases, judgment of contempt may be summarily pronounced. However, in cases such as the one before us, involving constructive contempts committed outside the presence of the court, a motion for a new trial is required. This rule is applicable in contempt proceedings, even though the error alleged is insufficiency of evidence. Zimmerman v. State, 46 Neb. 13, 64 N. W. 375 (1895). See, also, State v. Rhodes, 192 Neb. 557, 222 N. W. 2d 837 (1974); Wright v. Wright, 132 Neb. 619, 272 N. W. 568 (1937). In this case, appellant attempts to come within the exception provided in section 25-1143, R. R. S. 1943, on the ground that he was ''unavoidably prevented'' from filing his motion within the requisite 10-day period.

In the motion for a new trial filed by his counsel,

appellant alleges that he was unavoidably prevented from filing his motion within 10 days of the entry of the finding of contempt because of his lack of mental competency and the lack of services of competent counsel. At the hearing on the motion for a new trial held on May 21, 1976, appellant's first counsel testified with reference to his failure to file a motion on a new trial within the 10-day period. He stated that a week after the finding of contempt, appellant came to his office and stated that he was going to contest the finding of contempt, but that he was getting another attorney to do so. Appellant's first attorney did not engage in any active representation of him after that time, although he never formally withdrew as appellant's counsel. He felt he was out of the case once appellant told him he was getting another attorney. Appellant testified that he was not advised that a motion for new trial would have to be filed within 10 days, and was not aware of that fact and had no prior legal experience which would have made him cognizant of that fact. It also appears from the record that the appellant sought the services of a psychiatrist during the divorce proceedings, had had a history of mental illness, and was a somewhat unstable and unsophisticated person. The foregoing testimony was offered to prove that appellant was unavoidably prevented from filing a motion for a new trial within 10 days under section 25-1143, R. R. S. 1943. At the conclusion of the testimony, the trial court overruled the motion for a new trial. We conclude the court was correct in so doing.

The words "unavoidably prevented" refer to circumstances beyond the control of the party desiring to file a pleading in our courts. The law requires diligence on the part of clients and attorneys, and the mere neglect of either will not enable a party to relief on that ground. Nebraska Children's Home Soc. v. Collins, 195 Neb. 531, 239 N. W. 2d 258 (1976).

For cases reaching the same result for similar reasons, see, Community Credit Co. v. Gillham, 191 Neb. 198, 214 N. W. 2d 384 (1974); Vacek v. Marburger, 188 Neb. 180, 195 N. W. 2d 515 (1972). In Vacek v. Marburger, *supra,* we held that a defendant in the Nebraska Penal and Correctional Complex was under no disability barring the prosecution of an action in the courts of this state by reason of his imprisonment. We held that confinement in a penal institution does not unavoidably prevent a party from making a defense to an action against him. In that case the appellant had had counsel whom he discharged. He had been in contact with his wife, whom he expected to secure counsel for him. In Powell v. Van Donselaar, 160 Neb. 21, 68 N. W. 2d 894 (1955), we stated that an "event or a result is unavoidable which human prudence, foresight, and sagacity cannot prevent. The words of the statute 'unavoidably prevented' signify something that was beyond the ability of the person affected to have avoided."

Under these principles, the question is whether appellant's failure to file his motion within 10 days of the decision was due to circumstances beyond his control or ability. It undoubtedly was not, as he could have hired a new attorney immediately after the decision, rather than waiting more than 2 weeks to do so. The above-cited cases indicate that "mere neglect" of either the party or his attorney is not sufficient to invoke the statutory exception. We conclude that appellant was not "unavoidably prevented" from filing his motion for a new trial within 10 days, as that term is used in section 25-1143, R. R. S. 1943.

The law is well established that a motion for a new trial which is not filed within the time specified by statute, and not within one of the exceptions, is a nullity and of no force and effect; and that this court

will not review alleged errors occurring during a trial of a case in District Court, unless a motion for a new trial was made in that court and a ruling obtained thereon. Nebraska Children's Home Soc. v. Collins, *supra;* Parker v. Christensen, 192 Neb. 117, 219 N. W. 2d 235 (1974). It is also well established that in a law action, where no motion for a new trial was filed, this court on appeal will examine the record only for the purpose of determining whether or not the judgment is supported by the pleadings; and in the absence of a motion for a new trial, where a judgment is sustained by the pleadings, it will ordinarily be affirmed. Nebraska Children's Home Soc. v. Collins, *supra;* Lincoln Nat. Bank & Trust Co. v. School Dist. No. 41, 131 Neb. 773, 270 N. W. 311 (1936).

In order to determine whether the judgment of contempt in this case is supported by the pleadings, we must first determine what the pleadings in this contempt action are. The Nebraska statutes dealing with contempt, sections 25-2121 to 25-2123, R. R. S. 1943, do not specifically set out the manner or procedure for commencing a contempt action. Section 25-2122, R. R. S. 1943, merely states: "Contempts committed in the presence of the court may be punished summarily; in other cases the party upon being brought before the court, shall be notified of the accusation against him, and have a reasonable time to make his defense." It is not specified in what manner the party is to be notified of the accusation, but historically and traditionally notification has been made in several ways, including an affidavit for contempt, a motion to hold in contempt, and an information charging contempt. In 17 C. J. S., Contempt, § 72(1), at p. 180, it is stated: "Ordinarily, contempts may be prosecuted by affidavit of any party, and such an affidavit is regarded as constituting, or serving the purpose of, a complaint or pleading." We therefore examine the sufficiency of the

affidavit for contempt filed in this proceeding by Roberta, the appellee, against her husband.

Appellant contends, however, that since the affidavit in question was not first introduced and received in evidence and included in the bill of exceptions, notwithstanding it is included in the transcript, we may not consider it in this appeal to the Supreme Court. It is true that we have on occasions stated the rule to be that in order for an affidavit to be considered by this court it is necessary that it be offered in evidence in the trial court and preserved and made a part of the bill of exceptions, and that merely filing it in the office of the clerk of the District Court and making it a part of the transcript is not sufficient. See, Anderson v. Autocrat Corp., 194 Neb. 278, 231 N. W. 2d 560 (1975); Frye v. Frye, 158 Neb. 694, 64 N. W. 2d 468 (1954). A review of those cases, however, reveals that the context within which the rule was announced was that the rule was to be applicable to attempts or efforts to use the affidavit in question in an evidentiary manner, or in lieu of evidence, and not where the use of the affidavit was merely for the purpose of testing the sufficiency of the affidavit as a pleading. For example, in Anderson v. Autocrat Corp., *supra,* we stated: " 'An affidavit *used as evidence* in the District Court cannot be considered on an appeal of a cause to this court unless it is offered in evidence in the trial court and preserved in and made a part of the bill of exceptions.' " (Emphasis supplied.) Also in Frye v. Frye, *supra,* we held that affidavits not included in a bill of exceptions will not be "considered as evidence" by the Supreme Court. In the instant case, the use sought to be made of the affidavit in question is not for its use as evidence, but rather as a pleading, to test whether or not the pleadings in this contempt action sustain the judgment of contempt against the appellant entered by the District Court. The rule previously stated obviously does not apply

to the situation before us; and the affidavit in question may be considered and tested as a pleading in the same manner that a petition, answer, or reply might be tested in an ordinary civil law suit.

In the affidavit for contempt filed by Roberta in this case, she first alleged that on November 13, 1975, the court ordered and directed the appellant to pay all debts incurred prior to the filing of the petition for dissolution and hold Roberta harmless for same; and then, in the following paragraph, she alleged that: "The Respondent, though able to do so, has not paid said sums of money as ordered by the Court, but has failed, neglected and refused to pay the same and still contemptuously refuses to make such payments." Appellant contends that the foregoing affidavit is deficient for the reason that it fails to allege that his failure to pay was willful and contumacious. Malec v. Malec, 196 Neb. 533, 244 N. W. 2d 82 (1976); Wright v. Wright, *supra;* Thuman v. Thuman, 144 Neb. 177, 13 N. W. 2d 117 (1944); Frye v. Frye, *supra.*

The affidavit in this case does allege that the appellant was ordered to pay; and also that he had the ability to pay. The actual language used in the affidavit is: "That the Respondent, though *able* to do so, has not paid said sums of money as ordered by the Court, but has failed, neglected and *refused* to pay the same and still contemptuously refuses to make such payments." (Emphasis supplied.) The word "willfully" is not actually used in the affidavit, but it is clear from the context that the allegation of appellant's refusal to pay is intended as an allegation of a "willful refusal to pay." In Kammer v. State, 105 Neb. 224, 180 N. W. 39 (1920), we held that where an information for contempt for the violation of a remedial judicial order in a civil case shows clearly that the disobedience was "willful," the failure to use that word in making the charge is not a fatal defect. In that case we stated: "The informa-

tion states the jurisdictional facts. The making of the court's order and its violation by defendant are charged. It is also charged that, though often requested, defendant refuses to return the child to its mother. While the information does not use the word 'wilful,' the charge as a whole shows clearly that the disobedience was wilful. This is sufficient in that respect, where the proceeding is remedial to compel obedience to a judicial order." See, also, Thuman v. Thuman, *supra*. Our conclusion is that the contempt affidavit in this case was sufficient to state a cause of action in contempt against the appellant and is sufficient to support the judgment of the court in finding him in contempt and in sentencing him.

Finding no error, the judgment of the District Court must be affirmed.

AFFIRMED.

CLINTON, J., concurs in the result.