STATE OF NEBRASKA, APPELLEE, V. ARTHER L. EICHELBERGER,
APPELLANT.
418 N.W.2d 580

Filed February 5, 1988.    No. 86-1103.

546

Dennis R. Keefe, Lancaster County Public Defender, and Michael D. Gooch, for appellant.

Robert M. Spire, Attorney General, and Lynne R. Fritz, for appellee.

BOSLAUGH, CAPORALE, and GRANT, JJ., and MULLEN, D.J., and COLWELL, D.J., Retired.

CAPORALE, J.

Pursuant to the jury's verdict, defendant, Arther L. Eichelberger, was adjudged guilty of two counts of criminal nonsupport in violation of Neb. Rev. Stat. § 28-706(1) (Reissue 1985) and sentenced to concurrent terms of imprisonment for a period of not less than 18 months nor more than 3 years on each count. In this appeal Eichelberger assigns as error the district court's (1) finding that the evidence is sufficient to sustain the convictions, (2) abandonment of "a neutral and unbiased role," (3) failure to properly instruct the jury, (4) failure to grant a continuance, (5) failure to appoint counsel, and (6) finding Eichelberger waived his right to be represented by counsel. The record failing to support any of the foregoing assignments of error, we affirm.

Eichelberger's assignments of error involve two discrete sets of facts: Resolution of the first assignment of error depends upon the facts adduced at trial upon which proof of the offenses depends; resolution of the remaining assignments of error depends upon the facts concerning the procedures followed in this case. As the procedural record grew quite lengthy, largely at Eichelberger's instance, we, for the sake of clarity, detail these two sets of facts separately and consider the relevant assignments of error seriatim within the context of those facts.

## FACTS RELATING TO OFFENSES

Eichelberger was married to Jo Slama on April 21, 1983. The couple's only child was born on December 28, 1983. Slama separated from Eichelberger on June 19, 1984, and on September 1, 1984, while Eichelberger was physically present and represented by counsel, a temporary child support order was entered requiring Eichelberger to pay $225 per month in child support. A decree dissolving the marriage was entered on April 4, 1985, which ordered Eichelberger to pay $100 per month in child support starting on April 1, 1985. Once again, Eichelberger was present in court when the decree was announced and was also represented by counsel. Count I of the information alleges that Eichelberger intentionally failed to pay support under the temporary child support order, and count II that he intentionally failed to pay under the terms of the decree.

Eichelberger was employed by the Missouri Pacific Railroad during his marriage to Slama, but worked irregularly due to injuries received in an automobile accident which occurred prior to the marriage. Eichelberger received $550 per month in insurance benefits and $225 every 2 weeks from the Railroad Retirement Board until he returned to work with the railroad. Shortly after returning to work, Eichelberger broke his foot, resulting in another period of disability.

Eichelberger filed separate claims through a Lincoln attorney for both the automobile accident injury and the broken foot. On December 20, 1984, Eichelberger received and subsequently negotiated a check from his injuries attorney in the amount of $6,190.05 in partial settlement of the foot injury claim. In July 1985 Eichelberger received and subsequently negotiated another check from his injuries attorney in the amount of $42,669.19 as part of the settlement of the automobile accident claim. In addition, Eichelberger received disability payments from January 1985 through July 17, 1985, totaling $5,145.15, and railroad retirement benefits from October 1984 through April 1985, totaling approximately $3,500.

Child support records maintained by the clerk of the district court reflect that Eichelberger made no payments at all under the temporary support order and made only a $10 payment

under the decree. Neither Slama nor the child received any other type of support directly from Eichelberger. At the time of trial Eichelberger owed approximately $3,800 in arrearages under both support orders; $1,800 under the temporary support order and $2,083.51 under the decree.

Eichelberger introduced no evidence at all at trial, although in pretrial, posttrial, and other proceedings out of the presence of the jury, he made occasional references to surgery he thought he might need at some indeterminate time in the future, at a cost which he could not estimate.

## Sufficiency of Evidence

Section 28-706(1) provides: "Any person who intentionally fails, refuses, or neglects to provide proper support which he knows or reasonably should know he is legally obliged to provide to a spouse, minor child, minor stepchild, or other dependent, commits criminal nonsupport." If the failure to support violates a court order, as is charged in each count in the present case, the offense constitutes a Class IV felony, § 28-706(6), which may be punished by imprisonment for up to 5 years and a fine of up to $10,000. Neb. Rev. Stat. § 28-105 (Reissue 1985).

The State proved unequivocally the court's temporary child support order and decree and Eichelberger's failure to make payments as required. The essence of Eichelberger's first assignment of error is his contention that the State failed to prove his ability to pay under those orders. He argues that if he was unable to pay, his failure to pay was not "intentional," within the meaning of § 28-706(1).

In the context of a criminal statute, *"[i]ntentionally* means willfully or purposely, and not accidentally or involuntarily." (Emphasis in original.) *State v. Schott*, 222 Neb. 456, 462, 384 N.W.2d 620, 624 (1986). Intent may be inferred from the words or acts of the defendant and from the circumstances surrounding the incident. *State v. Pence, ante* p. 201, 416 N.W.2d 581 (1987). It is true that in *Halverson v. Halverson*, 189 Neb. 489, 492, 203 N.W.2d 452, 454 (1973), a civil support case, this court stated:

> When plaintiff rested defendant moved to dismiss the citation on the grounds that there was no proof beyond a

reasonable doubt that the defendant had the ability to pay the support required of him. The plaintiff adduced no evidence on that question. There was no showing as to whether or not the defendant had the ability to work or whether out of earnings or profits he was able to make the payments required. Defendant's motion should have been sustained at that stage.

Eichelberger urges that, like the plaintiff in *Halverson, supra*, the State failed to meet its burden by failing to prove Eichelberger's debts, and he asks this court so to hold as a matter of law. Eichelberger's argument widely misses the mark. The State proved that Eichelberger had resources with which he might have paid his past-due child support many times over. Eichelberger offered no evidence to overcome the inference that those resources were available to him had he wished to comply with the support orders.

As we have often noted and recently reaffirmed, in determining the sufficiency of the evidence to sustain a criminal conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact. The verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Lee, ante* p. 277, 417 N.W.2d 26 (1987); *State v. Richardson, ante* p. 274, 417 N.W.2d 24 (1987); *State v. Patman, ante* p. 206, 416 N.W.2d 582 (1987); *State v. Pence, supra; State v. Dwyer*, 226 Neb. 340, 411 N.W.2d 341 (1987). Under the state of the evidence, the determination of whether Eichelberger had the ability to pay was one of fact properly left to the jury.

In this regard Eichelberger's case seems more reminiscent of *State v. Reuter*, 216 Neb. 325, 343 N.W.2d 907 (1984), than of *Halverson, supra*. In *Reuter*, we said:

The evidence establishes that defendant was capable of working, was employed, and earned at least $1,000 per month. In support of defendant's argument that his ability to support his children was not established, he claims that his debts exceeded his income. . . . The support of one's children is a fundamental obligation which takes

precedence over almost everything else . . . .

. . . .

The fact of the matter is the evidence is sufficient to support defendant's conviction of felony nonsupport of his children. It establishes as well that he deliberately elected to ignore his obligations as a father . . . .

216 Neb. at 328-29, 343 N.W.2d at 910-11.

FACTS RELATING TO PROCEDURAL HISTORY

This brings us to a consideration of those aspects of the procedural history of this case which bear upon the remaining assignments of error.

Defendant was charged on December 17, 1985. The county court record contains the following entry dated June 16, 1986:

Def. appears pro se. Insists to court that he has funds to hire private counsel and does not want public defender. Has visited with [names of two attorneys] and lack of funds is not the reason that he hasn't retained them.

Court reviews finances and offers def. assistance of public defender office. Mr. Eichelberger refuses.

Highlights of Eichelberger's subsequent hegira through the district court include the following.

On July 3, 1986, Eichelberger appeared for arraignment in the district court and advised the court he had an attorney and that although the attorney, who was not Eichelberger's injuries attorney, was not present, he wanted to proceed, as the attorney told him to enter a plea. Eichelberger pled not guilty, and the trial judge clearly explained the possible penalties Eichelberger faced.

On August 20, 1986, a hearing was conducted on the State's motion to amend the information. The trial judge asked Eichelberger if he had money to hire a lawyer, and Eichelberger replied that he did. The court continued the hearing on the State's motion to amend the information, in deference to Eichelberger's asserted lack of notice.

On September 15, 1986, at the continuation of the hearing originally commenced on August 20, Eichelberger complained that he could not hire a lawyer because he did not have access to his money while in jail. The trial judge administered an oath to Eichelberger for the purpose of adducing testimony regarding

Eichelberger's indigency. Eichelberger, however, refused to discuss his assets, stating that he had sufficient money to hire a lawyer but that the money was somewhere in Missouri. Eichelberger requested a bond reduction so he could go get his money. The judge refused to grant a reduction in Eichelberger's bond, but remarked on the availability of a power of attorney through which an attorney or relative might retrieve Eichelberger's money. Eichelberger indicated he was unwilling to give anyone such a power.

On October 24, 1986, prior to commencement of trial and outside the presence of the jury, the trial judge engaged Eichelberger in the following colloquy:

[Judge]: . . . Mr. Eichelberger has indicated to the court that he desires to represent himself in this matter, which he has the right to do. He will, however, be held to the same standards as if he were represented as far as evidence and other matters are concerned.

The court has asked and is appointing Mr. Gooch of the Public Defender's Office to be standby for you so that if you have any questions of a legal nature that he will be available to answer these for you. He will not be sitting at the counsel table, but he will be available. And you're ready to proceed this afternoon, I take it, at 2 o'clock?

[Eichelberger]: Yes, Your Honor.

[Judge]: Do you have any questions?

[Eichelberger]: No, Your Honor.

[Judge]: Okay. And Mr. Gooch will be available if you need to ask anything about legal matters that you did not understand or something of that nature. You understand that?

[Eichelberger]: Yes, Sir.

[Judge]: And that is correct, that you want to proceed pro se; is that right?

[Eichelberger]: Yes, Your Honor.

Michael Gooch was in fact present as standby counsel throughout the remainder of the trial. At trial, Eichelberger requested a continuance to gather more information. The judge denied this oral motion, but observed that the trial would go on into the following week and that Eichelberger would have the

weekend to gather information prior to the following Monday; in fact, no testimony was taken in the case against Eichelberger until that Monday.

On October 27, 1986, in his pro se opening statement to the jury, Eichelberger asserted that he never said he would represent himself, and he promised to stand mute at trial. In the presence of the jury the trial judge noted that "[t]he record reflects that the defendant did waive or indicated to the court that he did want to represent himself." The court also noted the presence of Gooch as standby counsel for Eichelberger.

At his first opportunity to cross-examine, Eichelberger restated his intention not to participate in the trial, but nonetheless participated to the extent of indicating he had no objection to the admission into evidence of the divorce decree, the district court clerk's child support account sheet, and an exemplar of his handwriting. During recess, out of the presence of the jury, the judge again reviewed the record and again noted that Eichelberger had earlier expressed his desire to represent himself.

At the conclusion of the State's case in chief, out of the presence of the jury, the judge inquired whether Eichelberger had any motions to present. Eichelberger responded by complaining, for the first time, of lack of access to the jail law library, and renewed his motion for a continuance. Eichelberger was unwilling to say how long a continuance he would need, but indicated that any continuance would be for the purpose of enabling him to better prepare his pro se defense. The judge offered Eichelberger a 2-day continuance. After consulting with Gooch for nearly half an hour, Eichelberger testified but failed to address the motion for continuance, instead asserting that he was taking several kinds of medication. He did not, however, assert that the medication caused him any difficulty in conducting his defense. The court subsequently overruled the motion for continuance, explained in some detail Eichelberger's constitutional rights to testify on his own behalf or to refrain from doing so, and, still outside the presence of the jury, noted findings of fact for the record to the effect that Eichelberger had, in dealings with the court up to that time, appeared not to have been adversely affected by any medication he might be

taking.

On October 27, 1986, in the course of an instruction conference, the trial judge noted his intention to take judicial notice of the court's own record regarding continuances already requested and granted.

On October 28, 1986, during the last day of trial and out of the presence of the jury, the trial judge sustained the State's objection to Eichelberger's request that Gooch give Eichelberger's closing argument, noting:

> Mr. Gooch has been appointed by the court as standby counsel only and that does not mean he can participate. He's there to answer any legal questions for you. You have money to hire a lawyer. You indicated that previously and to the court yesterday again. And for those reasons the request is denied.

The trial concluded that day, and after the verdicts of guilty were returned, the trial judge seemingly invited a motion for new trial based on Eichelberger's asserted lack of access to the jail law library.

On October 30, 1986, while Gooch was still present as standby counsel, Eichelberger accepted the trial judge's invitation and moved for a new trial. He offered his own testimony that he was denied access to the jail law library. On cross-examination by the State's attorney, Eichelberger admitted he had never complained to the court about denial of access to the law library. The judge again, on his own motion, took notice of the court's files and records in Eichelberger's case. Upon redirect examination Eichelberger asserted: "[A]t the time of my preliminary hearing, I didn't — I did say that I didn't want a public defender, but I also asked the judge to let the record show that I wasn't refusing counsel, that I was able to get my own counsel."

Eichelberger also stated that his brother visited from Kansas City, Missouri, a few days before September 8; Eichelberger did not state why his brother did not bring any of Eichelberger's money with him, but Eichelberger later indicated he would not, in any event, have trusted his brother nor any of the attorneys he had dealt with to do this for him.

Eichelberger also testified that an attorney (other than his

injuries attorney or Gooch) had negotiated a plea bargain on his behalf with the county attorney's office, but he, Eichelberger, found it unacceptable and refused. Eichelberger also testified that he offered a $500 wage assignment in settlement of the case, but the county attorney refused. The trial judge then questioned Eichelberger as follows:

[Judge] You understand that you could have given a power of attorney to get $1,000 or something of that nature?

[Eichelberger] Yes. My basic point was if I could work the problem out, why get $1,000, Your Honor. Just try to resolve the problem so I can basically get back to my job.

On recross-examination Eichelberger testified that he was being represented by counsel in another action pending at the same time and had paid in advance for that representation. The court continued the hearing on Eichelberger's motion for new trial, ordering the county attorney to investigate the facts surrounding access to law library materials at the county jail.

On November 18, 1986, with Gooch still present as standby counsel, the State adduced evidence that Eichelberger requested use of the jail law library three times during the last week of September, all of which requests were granted. In October, Eichelberger requested use of the law library 12 times and was denied use for cause 3 times. In addition, Eichelberger had been allowed to make undocumented use of the law library upon verbal request. The judge again continued the hearing to give Eichelberger time to retrieve some documents.

On November 21, 1986, with Gooch still present as standby counsel, Eichelberger adduced testimony through several witnesses, including Gooch, the prosecuting attorney, several jail inmates, and himself. The State called one witness in rebuttal, whom Eichelberger cross-examined. Following closing arguments by both parties, the judge once again took judicial notice of the court's files in the case. The judge subsequently denied Eichelberger's motion for new trial.

On December 1, 1986, the trial judge, with Lancaster County Public Defender Dennis Keefe present as standby counsel, offered to continue sentencing 1 day to allow Gooch to be present. Eichelberger declined that offer, saying he had

reviewed the presentence report prior to this hearing and had no objection to its contents. The judge pronounced sentence and advised Eichelberger of, among other things, his right to appeal to this court.

## Judicial Role

Eichelberger's second assignment of error asserts the trial court "abandoned a neutral and unbiased status and role in order to testify and otherwise adduce evidence during the trial."

The record reveals that the trial judge questioned no witnesses before the jury and therefore cannot be said to have "adduce[d] evidence" in connection with the guilt-innocence phase of the trial. The record also demonstrates that the trial judge made no statement at all to the jury which may be characterized as "testimony," nor even any comment on the evidence. The sole comment to the jury to which Eichelberger's assigned error may by some leap of imagination be taken to refer is the court's accurate notation for the record, following Eichelberger's erroneous assertion to the contrary, that "[t]he record reflects that the defendant did waive or indicated to the court that he did want to represent himself. . . . The record should further reflect that Mr. Gooch is here as standby counsel."

It is, of course, axiomatic that a court should refrain from commenting on the evidence or making remarks prejudicial to a litigant or calculated to influence the minds of the jury. *State v. Bideaux*, 219 Neb. 718, 365 N.W.2d 830 (1985). See, also, *Pitt v. Checker Cab Co.*, 217 Neb. 600, 350 N.W.2d 507 (1984). In this case, however, it is clear that no such remarks were made. The comments the judge made outside the presence of the jury dealt with matters concerning the progress of the case and were made necessary by Eichelberger's obvious attempt to manipulate and thwart the judicial process. As noted in *U.S. v. Padilla*, 819 F.2d 952 (10th Cir. 1987), speaking in the context of a request for a substitution of counsel, when a court suspects manipulation on the part of a criminal defendant, it must balance the need for the efficient administration of the criminal justice system against the defendant's rights. The trial judge in this case correctly struck that balance.

To the extent Eichelberger may be understood to complain

that the trial judge took judicial notice of the record in this case, it is a well-established principle that in a criminal case a court may take judicial notice of its own records in the case under consideration. *State v. Coffen,* 184 Neb. 254, 166 N.W.2d 593 (1969).

Eichelberger's hyperbolic characterization of the trial judge's statements as abandonment of proper judicial demeanor borders dangerously on misrepresentation of the record.

## Jury Instruction

In his third assignment of error Eichelberger claims the trial judge erred in not instructing the jury, as required by Neb. Rev. Stat. § 27-201(7) (Reissue 1985), that it might but was not required to accept as conclusive any adjudicative fact which was judicially noticed. The fallacy in Eichelberger's position is that no judicially noticed adjudicative fact was put to the jury.

## Denial of Continuance

In his fourth assignment of error Eichelberger claims the trial judge abused his discretion by refusing to continue the trial so he could obtain counsel.

A motion for continuance in a criminal case is addressed to the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal absent a showing of abuse of discretion. *State v. Mecum,* 225 Neb. 293, 404 N.W.2d 431 (1987); *State v. Sluyter,* 224 Neb. 768, 401 N.W.2d 480 (1987). This court's prior cases support the proposition that where the criminal defendant's motion for continuance is based upon the occurrence or nonoccurrence of events within the defendant's own control, denial of such motion is no abuse of discretion. See, e.g., *State v. Carter,* 226 Neb. 636, 413 N.W.2d 901 (1987); *State v. Sluyter, supra; State v. Polyascko,* 224 Neb. 272, 397 N.W.2d 633 (1986); *State v. Lynch,* 223 Neb. 849, 394 N.W.2d 651 (1986); *State v. Fleming,* 223 Neb. 169, 388 N.W.2d 497 (1986); *State v. Richter,* 221 Neb. 487, 378 N.W.2d 175 (1985); *State v. Broomhall,* 221 Neb. 27, 374 N.W.2d 845 (1985); *State v. Keithley,* 218 Neb. 707, 358 N.W.2d 761 (1984); *State v. Otey,* 205 Neb. 90, 287 N.W.2d 36 (1979), *cert. denied* 446 U.S. 988, 100 S. Ct. 2974, 64 L. Ed. 2d 846 (1980). Eichelberger repeatedly assured the courts below that he had the funds to hire an attorney, yet he steadfastly declined the trial judge's

admonitions to do so. It was clearly within Eichelberger's power to engage an attorney. Where a criminal defendant is financially able to hire an attorney, he or she may not use his or her neglect in hiring one as a reason for delay. *State v. Richter, supra, after remand* 225 Neb. 837, 408 N.W.2d 717 (1987). Further, Eichelberger failed to comply with the requirements of Neb. Rev. Stat. § 25-1148 (Reissue 1985), which requires that motions for continuance be submitted in writing. *State v. Carter, supra.* In any event, it was not an abuse of discretion to deny Eichelberger a continuance once he had made his unwillingness to engage counsel expressly and abundantly clear.

Failure to Appoint Counsel

In his fifth assignment of error Eichelberger insists the trial judge abused his discretion by failing to appoint counsel to represent him.

Neb. Rev. Stat. §§ 29-1804.04 through 29-1804.07 (Reissue 1985) provide for the appointment of the public defender or other counsel to represent indigent defendants in criminal proceedings. As this court recently noted, the requirement of § 29-1804.05 is that before counsel is provided at public expense for a criminal defendant, there must be a reasonable inquiry to determine the defendant's financial condition. *State v. Richter, supra.* In determining whether a criminal defendant is indigent as the term is used in § 29-1804.04, a court is to consider the seriousness of the offense; the defendant's income; the availability of resources, including real and personal property, bank accounts, Social Security, and unemployment or other benefits; normal living expenses; outstanding debts; and the number and age of dependents. *State v. Masilko*, 226 Neb. 45, 409 N.W.2d 322 (1987); *State v. Richter, supra.*

In *State v. Richter, supra*, the trial court made an inadequate effort to assess the defendant's ability to retain counsel. In the case now before us, however, the trial judge made every effort to assess Eichelberger's ability to retain counsel, but that effort was frustrated by Eichelberger's refusal to disclose his financial condition. As the trial judge correctly noted, "I'm trying to find out whether or not you're entitled to have the court appoint a lawyer for you. If you have the money to hire a lawyer, then I have no authority to appoint a lawyer for you. . . .

I can't assume that you're indigent."

Exercise of the right to assistance of counsel is subject to the necessities of sound judicial administration. *State v. Richter, supra.* Criminal defendants are not permitted to use their constitutional right to counsel to manipulate or obstruct orderly procedure in the courts or to interfere with the fair administration of justice. *State v. Clark*, 216 Neb. 49, 342 N.W.2d 366 (1983). It was no abuse of discretion for the trial judge to refrain from appointing counsel for Eichelberger at public expense.

## Waiver of Right to Counsel

Finally, in his sixth assignment of error Eichelberger claims the trial judge erred in finding he waived his right to be represented by counsel. In this regard the facts of the present case are reminiscent of those recited in *State v. Tharp*, 224 Neb. 126, 395 N.W.2d 762 (1986). In *Tharp* this court noted:

> [T]he defendant was advised of his right to counsel at his initial appearance . . . and was advised of his right to request appointed counsel at his arraignment . . . . Defendant chose to appear without counsel on repeated occasions. We hold that once a defendant has been informed of his right to retained or appointed counsel, . . . his conduct in appearing without counsel may result in a waiver of counsel. The course of conduct defendant chose to follow in this case operated as a waiver of counsel.

*Id.* at 128-29, 395 N.W.2d at 765. As we have already noted, criminal defendants are not permitted to utilize the constitutional right to counsel to manipulate or obstruct the orderly procedure in the courts or to interfere with the fair administration of justice. *State v. Clark, supra.* It is clear that Eichelberger waived his right to counsel.

AFFIRMED.