STATE OF NEBRASKA, APPELLEE, V. VERNON G. RICHTER, APPELLANT.

378 N.W.2d 175

Filed December 13, 1985.    No. 85-275.

Philip M. Kelly of Winner, Nichols, Douglas and Kelly, for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Following a county court bench trial, defendant, Vernon G. Richter, was convicted of third offense driving while under the influence of alcohol pursuant to a Scottsbluff city ordinance. He was thereafter sentenced to incarceration in the county jail for a period of 6 months, to pay a fine of $500, to have his operator's license permanently revoked, and to pay costs. On appeal the district court affirmed the conviction and sentence. Richter's assignments of error in this court merge into claims that the district court erred by affirming the county court's (1) determination that Richter was not indigent and therefore not entitled to appointed counsel, (2) failure to grant a continuance, and (3) finding that the evidence was sufficient to support the charge. We remand with the direction that a further inquiry be conducted to determine whether Richter was indigent at the time of trial. If so, he is to be granted a new trial; if not, the judgment of conviction and sentence stand affirmed.

On October 13, 1984, Officers James Moore and Edwin Mayo of the Scottsbluff Police Department observed Richter's

vehicle proceeding along a street in an area to which they had earlier been dispatched because of a disturbance. Richter, who was not involved in the disturbance, pulled his vehicle to the side of the road and parked it about a half block away from the scene of the disturbance.

After the officers had taken care of the disturbance, they noticed that Richter had slumped down in the seat of his automobile. They thereupon approached the automobile and pounded on the windows; Richter, however, failed to respond. The officers saw that Richter was lying on the front seat and, with the help of a tool, unlocked a door. As they went to shake him, Richter awoke.

The officers then detected a strong smell of alcohol on Richter's person and observed that his eyes were bloodshot and that his speech was slurred.

The officers thereupon advised Richter not to drive any more that night, and Richter agreed. Shortly thereafter, Officer Mayo saw Richter's automobile proceeding down a street with the headlights off. After radioing Officer Moore, Mayo stopped the vehicle and found that Richter was driving.

Richter was then asked to perform some field sobriety tests, which he performed unsatisfactorily. After concluding that Richter was intoxicated, the officers arrested him and took him to the police station. Richter subsequently submitted to a chemical test of his breath, which indicated that he had fourteen-hundredths of 1 percent of alcohol in his blood.

Richter appeared at the arraignment hearing on October 26, 1984, without counsel and pled not guilty. In response to the county judge's questioning, he informed the court that he intended to hire a Scottsbluff attorney with whom he had spoken. The court then instructed Richter to get a trial date from the clerk of the court and to get in touch with his attorney. Trial was set for December 18, 1984.

The Scottsbluff attorney wrote the court on November 16, 1984, explaining that he had received a notice of trial regarding Richter and the charges against him. The attorney explained that he had not been "officially" retained by Richter and asked whether, if he were retained, the matter could be continued, as he was committed to taking depositions in another state on the

scheduled trial date. The letter to the court indicates that a copy was sent to Richter.

On the scheduled trial date Richter appeared without counsel. The dialogue between Richter and the county judge establishes that Richter could not borrow and therefore could not pay the $3,000 fee the Scottsbluff attorney wanted in advance of trial. Richter had known for a "couple of weeks" prior to the scheduled trial that he could not "come up" with the money, but nonetheless continued in his efforts to borrow. Richter also indicated he had discussed the matter with a Gering attorney, who indicated that his total fee would be between $2,500 and $3,000, $1,000 of which would have to be paid before trial. Richter indicated "it's going to take me a little while to save up that kind of money" and asked that an attorney be appointed for him. The county judge then inquired as to Richter's income. Richter replied it was between $1,400 and $1,500 a month. The record does not disclose whether that was gross or net income. The following exchange then took place.

[Judge]: It's pretty hard to call you a pauper.

[Richter]: Well, yeah, but, you know, I've got other debts too. They want it all at once. Owe 3,000, and I can't come up with it.

[Judge]: And are you supporting anybody besides yourself?

[Richter]: My wife and four kids.

[Judge]: That sounds like a lot of income for a pauper.

. . . .

[Judge]: I don't believe that you're within the guidelines of the public defender's office at all, Mr. Richter. I'm going to have to turn you down on that application.

Richter then moved for a continuance in order that he might see whether he could come up with the $1,000 in "maybe a month's time" or perhaps less, as he was to receive a check on "the 28th of this month." The prosecutor objected on the ground that his client had incurred expenses in procuring the presence of its witnesses. In denying Richter's motion for continuance, the county judge observed that Richter knew he could have called the clerk of the court or the judge prior to the day of trial to ask for more time in order to secure the services of

an attorney.

The matter then proceeded to trial. In addition to establishing the facts surrounding the arrest and blood alcohol content, as set forth earlier, the prosecution offered in evidence certified copies of two prior counseled convictions of Richter for driving while under the influence of alcohol.

After the State's closing argument, the court asked Richter whether he wanted to argue. Richter informed the court that he had two witnesses he wanted to bring to court but that he did not have them ready that day. The court told Richter that "[t]hat might have been grounds for a continuance [before evidence was introduced] but it's too late to bring that up now."

Richter first claims that the county court erred in refusing to appoint the public defender to represent him and that such refusal constituted a violation of his sixth amendment right to counsel.

Neb. Rev. Stat. § 29-1804.05 (Cum. Supp. 1984) provides:

> At a felony defendant's first appearance before a court, the court shall advise him or her of the right to court-appointed counsel if he or she is indigent.

> If he or she asserts indigency, the court shall make a reasonable inquiry to determine his or her financial condition, and may require him or her to execute an affidavit of indigency. If the court determines him or her to be indigent, it shall formally appoint the public defender to represent him or her in all proceedings before the court, and shall make a notation of such appointment and appearances of the public defender upon the felony complaint. The same procedure shall be followed by the court in misdemeanor cases punishable by imprisonment.

Neb. Rev. Stat. § 29-1804.04 (Reissue 1979) defines indigent, as used in the foregoing statute, as meaning

> the inability to retain legal counsel without prejudicing one's financial ability to provide economic necessities for one's self or one's family. Before a felony defendant's initial court appearance, the determination of his or her indigency shall be made by the public defender, but thereafter it shall be made by the court.

Neb. Rev. Stat. § 29-1804.03 (Cum. Supp. 1984) provides

that "[i]t shall also be the duty of the public defender to represent all indigent persons charged with misdemeanor offenses punishable by imprisonment, when appointed by the court."

The Scottsbluff ordinance under which Richter was charged does not appear in the record. While this court will not take judicial notice of a municipal ordinance which is not in the record, *State v. Austin*, 219 Neb. 420, 363 N.W.2d 397 (1985), it cannot ignore the fact that Richter was sentenced to incarceration and that there is no claim that such sentence is outside the penalties authorized by the ordinance. Consequently, we must treat the offense as one punishable by imprisonment and therefore as one which requires the appointment of the public defender if Richter is an indigent as defined in § 29-1804.04.

Richter claims that the "cursory examination [conducted by the county court] concerning the Defendant's finances does not meet the guidelines set forth in the Statutes" and that the county court's refusal to appoint counsel resulted in a violation of his right to counsel under the sixth amendment to the U.S. Constitution. Brief for Appellant at 11.

It is beyond dispute that a defendant is entitled to be represented by counsel at all critical stages of a criminal proceeding against him. *State v. Jost*, 219 Neb. 162, 361 N.W.2d 526 (1985). Obviously, the trial itself is a critical stage. See, *State v. Sondag*, 214 Neb. 659, 335 N.W.2d 306 (1983); *State v. Moore*, 203 Neb. 94, 277 N.W.2d 554 (1979). Entitlement to the assistance of counsel and entitlement to the provision of counsel at public expense are, however, different matters.

The requirement of § 29-1804.05 is that before counsel be provided at public expense, there be a "reasonable inquiry to determine" the defendant's "financial condition." There is authority for the proposition that evidence of earnings alone may support a determination that indigency does not exist. *United States v. Allen*, 596 F.2d 227 (7th Cir. 1979) ($25,000 annual income), *cert. denied* 444 U.S. 871, 100 S. Ct. 149, 62 L. Ed. 2d 97; *Glenn v. United States*, 303 F.2d 536 (5th Cir. 1962) ($5,700 annual income). Other courts, however, require a

consideration of factors such as the seriousness of the offense; the defendant's income; the availability to the defendant of other resources, including real and personal property, bank accounts, Social Security, and unemployment or other benefits; normal living expenses; outstanding debts; and the number and age of dependents. *State v. Lathe*, 132 Vt. 631, 326 A.2d 147 (1974); *Bolds v. Bennett*, 159 N.W.2d 425 (Iowa 1968), *questioned, State v. Gilroy*, 313 N.W.2d 513 (Iowa 1981), *but followed, In re Marriage of Kopp*, 320 N.W.2d 660 (Iowa App. 1982); *State ex rel. Partain v. Oakley*, 159 W. Va. 805, 227 S.E.2d 314 (1976).

This court considered whether the "reasonable inquiry" required by § 29-1804.05 was conducted in *State v. Radford*, 202 Neb. 440, 276 N.W.2d 82 (1979). The defendant therein earned "about 116 every four days," *id.* at 441, 276 N.W.2d at 83, was single, had no cash or bank accounts, and owned no property except an automobile on which he owed more than it was worth. The trial court denied the defendant's request for appointment of an attorney. Following a continuance, the defendant appeared for trial without an attorney. On a motion for post conviction relief, the defendant asserted that the trial court should have appointed counsel for him. Characterizing the case as "borderline," this court nonetheless held that the record sustained the county court's finding that without a further showing of inability to obtain counsel, the defendant was not entitled to court-appointed counsel at the public's expense.

While in *State v. Radford, supra*, there was a showing that the defendant was single, the showing here is that defendant had a wife and four children to support and had an undisclosed amount of indebtedness. It may be that further inquiry will demonstrate that, notwithstanding those circumstances, Richter's financial situation was such that he could nonetheless "retain legal counsel without prejudicing [his] financial ability to provide economic necessities for [himself] or [his] family." § 29-1804.04. That determination cannot be made, however, on the basis of the limited inquiry conducted by the county judge.

Therefore, the cause is remanded with the direction that another inquiry be conducted into the factors considered by

other courts, as set forth above, and a new determination made as to Richter's indigency at the time of trial. If the determination so made is that Richter was indigent at the time of trial, he shall be granted a new trial on the ground that the public defender should have been appointed as counsel for him.

If a new trial is had as a result of the foregoing, the question of whether a continuance ought to have been granted obviously resolves itself. If, on the other hand, the new inquiry does not result in a new trial, the continuance issue will remain a viable one. Since we cannot determine at this time whether a new trial is to be had, we consider Richter's claim that the overruling of his motion for a continuance deprived him of his constitutional right to counsel.

We begin by recalling that a motion for the continuance of a trial is addressed to the sound discretion of the trial court and that the trial court's ruling on such a motion will not be disturbed on appeal in the absence of a showing of an abuse of that discretion. *State v. Broomhall, ante* p. 27, 374 N.W.2d 845 (1985).

The exercise of the right to the assistance of counsel is subject to the necessities of sound judicial administration. As stated in *United States v. Arlen*, 252 F.2d 491, 494-95 (2d Cir. 1958):

> Although the right to assistance of counsel is absolute, United States v. Morgan, 2 Cir., 1955, 222 F.2d 673, the exercise of that right is subject to the necessities of sound judicial administration. Further, the right itself, being personal, may be waived. See Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L.Ed. 1461. We think it clear that although a defendant able to retain counsel is entitled to a reasonable time to secure counsel, he may not indefinitely postpone trial by continued applications for more time to seek representation. Whether additional time should be granted is within the sound discretion of the trial court. Further, where a defendant able to retain counsel has been advised by the court that he must retain counsel by a certain reasonable time, and where there is no showing why he has not retained counsel within that time, the court may treat his failure to provide for his own defense as a waiver of his right to counsel and require such

defendant to proceed to trial without an attorney. Such a waiver is similar in its consequences to an election made by an indigent defendant.

See, also, *United States v. Casey*, 480 F.2d 151 (5th Cir. 1973), *cert. denied* 414 U.S. 1045, 94 S. Ct. 550, 38 L. Ed. 2d 336; *United States v. Terry*, 449 F.2d 727 (5th Cir. 1971); *Commonwealth v. O'Brien*, 380 Mass. 719, 405 N.E.2d 650 (1980); *Hendrix v. State*, 145 Ga. App. 170, 243 S.E.2d 112 (1978); *Com. v. Andrews*, 282 Pa. Super. 115, 422 A.2d 855 (1980); *State v. McCrowre*, 312 N.C. 478, 322 S.E.2d 775 (1984). As the court stated in *Gottschalk v. State*, 602 P.2d 448, 451 (Alaska 1979), *cert. denied* 447 U.S. 920, 100 S. Ct. 3010, 65 L. Ed. 2d 1112 (1980), "Where a defendant is financially able to engage an attorney, he may not use his neglect in hiring one as a legitimate reason for delay."

We addressed an argument similar to Richter's contention in *State v. Peterson*, 183 Neb. 826, 164 N.W.2d 649 (1969). Therein, the defendant was arrested and charged with a misdemeanor offense. Trial was set for approximately 3 weeks later, during which time the defendant was free on bond. At the time of trial the defendant requested a continuance so that he could retain counsel. The motion was overruled, and the case proceeded to trial with the defendant representing himself. Following his conviction, the defendant appealed the denial of a continuance, claiming a violation of his right to counsel. In view of the fact that defendant did nothing to retain counsel during the time he was free on bond prior to trial, this court held that the trial court did not abuse its discretion in denying the motion. It was observed that

> [t]he court must balance the considerations of the right to a reasonable opportunity to prepare for trial and to consult counsel, with the necessity for the orderly and prompt disposition of cases in the ordinary course of the administration of justice, and must be mindful that such rights may be exercised to subvert the orderly processes of justice by the disappearance of witnesses and other considerations not necessary to discuss here.

*Id.* at 829, 164 N.W.2d at 651.

It is true that *Peterson* is factually distinguishable from the

case presently before us. Whereas the defendant in *Peterson* had made no attempts to obtain counsel prior to appearing for trial, Richter did make such attempts but concluded he was unable to afford private counsel. Nonetheless, if it is determined that Richter was not indigent, he had ample time to retain counsel, and the county court will not have abused its discretion in overruling his motion for a continuance.

Once again, Richter's final contention, that there was not sufficient evidence to sustain his conviction for third offense driving while under the influence of alcohol, will remain viable only if a new trial is not required. Richter's only argument in this regard is that he was not given the opportunity to review the records of his prior convictions and to bring mitigating factors to the attention of the court, as required by Neb. Rev. Stat. § 39-669.07 (Reissue 1984).

Section 39-669.07 provides in part:

For each conviction under this section, the court shall as part of the judgment of conviction make a finding on the record as to the number of the defendant's prior convictions under this section prior or subsequent to July 17, 1982, and the defendant's prior convictions under a city or village ordinance enacted pursuant to this section either prior or subsequent to July 17, 1982. The defendant shall be given the opportunity to review the record of his or her prior convictions, bring mitigating facts to the attention of the court prior to sentencing, and make objections on the record regarding the validity of such prior convictions.

A preliminary point to be noted is that the statutory language provides: "For each conviction *under this section* . . . ." (Emphasis supplied.) For purposes of this opinion, we assume, but do not decide, that the last sentence quoted above of § 39-669.07 applies to this case notwithstanding the foregoing emphasized language.

At trial the prosecutor displayed to Richter the certified documents evidencing the prior convictions, and the county judge asked, "Mr. Richter, do you have any objection" to the exhibits? Richter replied, "No, Your Honor."

At the sentencing hearing the county judge reviewed the

contents of Richter's presentence report, then asked Richter, "Would you like to say anything before the Court imposes sentence?" At this point Richter made several comments about how his drinking behavior had decreased, how the police who testified against him were lying, and about how the police in Scottsbluff were trying to "nail" him.

The county judge then asked, "Is there anything more you'd like to say before the Court imposes the sentence?" Richter replied, "Nothing, only that . . . the only way I'm going to be able to live in peace, I guess, is to move away from here because I sure can't live in peace around here."

Assuming the pertinent language of § 39-669.07 to be applicable, the bill of exceptions establishes that Richter was given ample opportunity to review the record of his prior convictions, to object to its validity, and to bring mitigating circumstances to the attention of the court prior to sentencing. Thus, Richter's final contention is without merit.

We remand the cause to the district court with the direction that it remand to the county court for further proceedings consistent with this opinion.

REMANDED WITH DIRECTIONS.