STATE OF NEBRASKA, APPELLEE, V. DONALD LYNCH, APPELLANT.

394 N.W.2d 651

Filed October 10, 1986.    Nos. 86-073, 86-074.

Harry R. Meister of Meister and Segrist, for appellant.

Robert M. Spire, Attorney General, and Mark D. Starr, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Defendant, Donald Lynch, was charged with second offense operating or having "actual physical control of a motor vehicle upon a highway while under the influence of alcoholic liquor" in violation of an ordinance of the city of Scottsbluff, and with obstructing a peace officer in violation of Neb. Rev. Stat. § 28-906(1) (Reissue 1985). The county court, sitting without a jury, found defendant guilty of the driving while intoxicated charge and sentenced him to incarceration in the county jail for 30 days, revoked his operator's license for 1 year, and ordered him to pay a $500 fine and the costs. This conviction and

sentence were affirmed by the district court, and the district court's judgment has been appealed to this court as case No. 86-073. At a separate trial a county court jury found defendant guilty of the obstruction charge. The county court thereafter so adjudged him and subsequently sentenced him to imprisonment for 1 year at the Nebraska Penal and Correctional Complex and ordered him to pay a fine of $1,000 and the costs. This conviction and sentence were also affirmed by the district court, and the district court's judgment has been appealed to this court as case No. 86-074. Pursuant to the stipulation of the parties, the cases were consolidated for briefing in this court by the State and for argument. We affirm the judgment of the district court in each case.

## FACTS

At approximately 1:40 a.m. on January 19, 1985, Charles Preble, a trooper with the Nebraska State Patrol, observed a pickup truck driven by defendant moving erratically on the streets in Scottsbluff. When Trooper Preble stopped the truck, defendant fumbled for his driver's license and admitted that he had been drinking. After defendant failed several field sobriety tests, Preble concluded defendant was intoxicated and took him to the Scottsbluff Police Department for breath testing. After the testing was completed, Preble escorted defendant from the police station to his patrol car in order to drive him to the jail. Defendant, being neither handcuffed nor otherwise restrained, sat in the front passenger seat beside Preble.

Preble testified that a few blocks from the station defendant began to utter derogatory remarks about Preble and his brother and threatened repeatedly to "kick the hell" out of Preble. Defendant's version of that conversation is that it was Preble who threatened defendant. Preble testified he felt that an assault upon him was imminent and, thus, pulled off the road. Preble then picked up the hand microphone of his radio to call the patrol dispatcher. After he gave his call number, defendant knocked the microphone from Preble's hand. Preble testified that he then bailed out of the car, knowing that he would have to find some way to restrain defendant, and walked to the passenger side to attempt to handcuff defendant. He was unsuccessful because defendant was throwing his arms around.

After again threatening to "kick the hell out of" Preble, defendant stood up from the car.

Defendant, on the other hand, testified that Preble opened the passenger door and grabbed him by the shirt, whereupon defendant shoved Preble, who then fell to the ground. Defendant said that he was "right on top of" Preble and swatted him across the face, missing once and hitting the pavement instead. According to defendant, Preble cried, "Don, let me up, you've whipped me, you've whipped me, let me up." Preble denied there was ever any time when either he or defendant went to the ground. According to Preble, he and defendant wrestled by the passenger side of the patrol car. After several minutes Preble abandoned the handcuffs in favor of a Kubotan, a pressure-hold-type instrument used for restraining. Defendant's strength and size, however, prevented Preble from subduing him. In fact, according to Preble, defendant grabbed the Kubotan, injuring Preble's hand in the process. Defendant continued his verbal abuses and grabbed Preble's glasses from his face.

At this time a private security guard happened upon the area and saw the struggle. He asked Preble if he needed help. Preble replied affirmatively, and with the guard's help defendant was handcuffed. Defendant's testimony was that the guard came up and started hitting his legs with a club or a tire iron. The guard denied doing that, but another witness testified that as he drove by the area, he saw the guard hitting defendant on the legs with some object. The two jailors present when defendant was taken in for booking testified that defendant made no complaint about any injury to his legs.

In the meantime, the patrol dispatcher had telephoned the Scottsbluff and Gering Police Departments to ask their officers if they could locate Preble. A Gering police officer arrived at the scene while Preble and the guard were handcuffing defendant and putting him into the patrol car. Preble attempted to secure defendant's feet with a plastic Flex-cuf, a piece of plastic which locks together in a loop that can be tightened. Defendant, however, refused to put his feet together, as a result of which they could not be restrained.

Preble then drove defendant to the jail at the sheriff's

department, and the police officer followed. At the jail defendant continued the verbal abuses directed at Preble.

## DRIVING CHARGE

Except as discussed later in this opinion, defendant's assignments of error in connection with the driving while intoxicated conviction and sentence relate to the enactment and application of a municipal ordinance which was offered in evidence in the district court but not in the county court.

### Ordinance Issues

In offering the provisions of the Scottsbluff Mun. Code § 21-2,140 (1983) in evidence before the district court, defendant represented it to be a renumbered version, apparently under some undisclosed codification, of the ordinance under which defendant was charged, Scottsbluff Mun. Code § 21-260(2). The district court properly refused to admit the ordinance in evidence, for in an appeal of a criminal case from the county court to the district court, the latter acts as an intermediate court of appeal, and its review is limited to an examination of the county court record for error or for an abuse of discretion. *State v. Schroder*, 218 Neb. 860, 359 N.W.2d 799 (1984); *State v. Olson*, 217 Neb. 130, 347 N.W.2d 862 (1984); Neb. Rev. Stat. § 24-541.06(1) (Reissue 1985). Where an ordinance charging an offense is not properly a part of the record, this court presumes the existence of a valid ordinance creating the offense charged, but does not otherwise take judicial notice of such an ordinance. *State v. Austin*, 219 Neb. 420, 363 N.W.2d 397 (1985); *State v. Bruce*, 213 Neb. 661, 330 N.W.2d 752 (1983). See, also, *State v. Richter*, 221 Neb. 487, 378 N.W.2d 175 (1985). Consequently, we do not address the myriad assignments of error relating to the ordinance under which defendant was convicted and sentenced.

### Jury Issues

The record does, however, clearly establish that defendant demanded a jury trial on the driving while intoxicated charge and that said demand was refused under the authority of Neb. Rev. Stat. § 24-536 (Reissue 1985), which provides:

> Either party to any case in county court, except criminal cases arising under city or village ordinances, traffic infractions, and other infractions, and except any

matter arising under the provisions of the Nebraska Probate Code, may demand a trial by jury. In civil cases, the demand must be in writing and must be filed on or before answer day. All provisions of law relating to juries in the district courts shall apply to juries in the county courts and the district court jury list shall be used, except that juries in the county courts shall consist of six persons. Consequently, there remains for consideration the error assigned to the county court's failure "to find that 24-536 R.R.S. Neb. is an unconstitutional denial of this defendant's due process and equal protection rights to a trial by jury." See *State v. Richter, supra,* which considered whether one sentenced to incarceration under an ordinance not in the record was entitled to the appointment of counsel.

### Constitutional Concerns

Defendant first argues that, irrespective of what may have been the situation in the past, the consequences of a conviction for driving while intoxicated are now so severe as to give him a constitutionally protected right to a trial by jury.

It is true that under present state law, one convicted of second offense driving while intoxicated under the provisions of Neb. Rev. Stat. § 39-669.07(2) (Cum. Supp. 1986) must be sentenced as defendant was sentenced under the Scottsbluff ordinance. That is, he or she must be incarcerated for a period of 30 days, have his or her driver's license revoked for 1 year, and be fined $500. However, a majority of this court has held that for the purpose of determining whether, in connection with third offense driving while intoxicated, the enactment of § 39-669.07(3) (Cum. Supp. 1982) enhanced or mitigated the punishment authorized by prior law, § 39-669.07(3) (Reissue 1978), we look only to the incarceration portion of the sentence. Section 39-669.07(3) (Cum. Supp. 1982) provided for imprisonment of not less than 3 nor more than 6 months, a fine of $500, and the permanent revocation of the offender's driving privilege. Section 39-669.07(3) (Reissue 1978) authorized imprisonment for up to 5 years, a fine of up to $10,000, and suspension of the offender's driving privilege for 1 year. *State v. Peiffer,* 212 Neb. 864, 326 N.W.2d 844 (1982).

*State v. Amick,* 173 Neb. 770, 114 N.W.2d 893 (1962),

involved then Neb. Rev. Stat. § 26-118 (Reissue 1956), which provided for municipal court jury trials except in "criminal cases arising under city or village ordinances." *Id.* at 773, 114 N.W.2d at 895. The accused in *Amick* had been charged with driving while intoxicated in violation of the ordinance of a city which was empowered to impose imprisonment of not more than 6 months, or a fine of $500, or both. The accused demanded and was refused a jury trial. He was then convicted and sentenced to pay a $100 fine and costs. He challenged the constitutionality of § 26-118, claiming it to violate the provisions of Neb. Const. art. I, § 6, which provided then, as it does now, that the "right of trial by jury shall remain inviolate." The *Amick* court ruled, however, that the aforesaid constitutional provision preserves the right to trial by jury as it existed at common law and under the statutes in force when the Constitution was adopted. Since the offense charged was neither a crime at common law nor by statute when the Constitution was adopted, it was not within the purview of article I, § 6. *Amick* also rejected the contention that the offense was not a petty one because the ordinance authorized revocation of one's driver's license, and further said one is not entitled to a jury trial merely because an ordinance is but a reiteration of a statute concerning the same offense. Accord *State v. Thomas, ante* p. 759, 393 N.W.2d 711 (1986).

Having concluded there is no right to a jury trial under this state's Constitution, we must determine whether such a right exists under the federal Constitution. It has been held that because trial by jury in criminal cases is fundamental to the scheme of American justice, the due process clause of the 14th amendment to the U.S. Constitution requires states to afford a trial by jury whenever the 6th amendment to the U.S. Constitution would require such a trial if the case were in federal court. However, the sixth amendment does not require trial by jury in crimes carrying possible imprisonment of no more than 6 months if they otherwise qualify as petty offenses. Consequently, the 14th amendment does not require states to afford jury trials of petty offenses. *Ballew v. Georgia*, 435 U.S. 223, 98 S. Ct. 1029, 55 L. Ed. 2d 234 (1978); *Bloom v. Illinois*, 391 U.S. 194, 88 S. Ct. 1477, 20 L. Ed. 2d 522 (1968); *Duncan v.*

*Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968). As second offense driving while intoxicated qualifies as a petty offense, defendant does not have a federal constitutional right to trial by jury.

We are not unmindful of the fact that in *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510 (1985), we characterized drunk driving as a "serious offense, particularly when the defendant has previously committed the same act," which warrants a harsh penalty. *Id.* at 394, 377 N.W.2d at 520. That characterization was made, however, in the context of recognizing that driving while under the influence of alcohol presents serious risks and therefore justifies resolute treatment. *Michalski* simply did not involve the issue under consideration in the present case.

Defendant argues that our holding in *State v. Karel*, 204 Neb. 573, 284 N.W.2d 12 (1979), nonetheless requires that he be granted a jury trial. Such is not the case. While *Karel* did hold that the accused was entitled to a jury trial under the provisions of § 24-536, the offense of driving while intoxicated was charged under the state statute, not under a city ordinance. *Karel* rests on the fact that the offense charged was not a "traffic infraction" as defined by law, and, therefore, § 24-536 did not exclude the offense from those classes of cases entitled to be tried to a jury. *Karel* was concerned with a statutory, not a constitutional, right.

### Statutory Concerns

Defendant next argues that § 24-536 deprives him of equal protection of the laws under the 14th amendment to the U.S. Constitution and subjects him to disparate treatment such as to violate article III, § 18, of the Nebraska Constitution, because he would have been entitled to a jury trial if he had been charged under the provisions of § 39-669.07 (Reissue 1984) rather than under the Scottsbluff ordinance.

The difficulty is that declaring § 24-536 invalid, as defendant urges, would not provide him with the right to trial by jury. Such a declaration would simply do away with the authority § 24-536 provides for conducting jury trials in any case tried in the county court.

A litigant who would receive no benefit from a declaration of

invalidity has no standing to challenge the constitutionality of a statute. See, *Ellis v. County of Scotts Bluff*, 210 Neb. 495, 315 N.W.2d 451 (1982); *Stahmer v. Marsh*, 202 Neb. 281, 275 N.W.2d 64 (1979). Because defendant would receive no benefit by a declaration that § 24-536 is unconstitutional, a determination we do not make, he has no standing to challenge the entire statute.

Whether any particular provision of § 24-536 is unconstitutional and severable from the rest of the statute as applied to this case is a matter which is not within the reach of defendant's assignment of error and has not been either briefed or argued. Consequently, we do not consider such a question.

## OBSTRUCTION CHARGE

We are left, then, with the task of analyzing and resolving those issues presented by the errors assigned to the district court's judgment which are discussed in defendant's brief in connection with the obstruction conviction and sentence. These issues are whether the district court should have ruled that (1) the case be remanded to the county court because the voir dire examination of the alternate venirepersons was not recorded, (2) the county court erred in denying defendant's requests for continuances, (3) the county court erred in not granting a mistrial, (4) the county court erred in determining the evidence sufficient to support the conviction, (5) the county court failed to give a certain instruction requested by defendant, (6) the county court erred in finding § 28-906 constitutional, and (7) the county court erred in imposing an excessive sentence.

### Nonrecording

The first issue rests upon the fact that the county court failed to make a record of the examination of the alternate venirepersons, during which time the prosecutor is claimed to have remarked that defendant was being tried separately as a drunk driver. Defendant's motion for mistrial on the basis of that statement was overruled. While we do not know why the prosecutor chose to comment at that time about an offense for which defendant was not then being tried, nor why part of the proceedings were not recorded, the failures to grant a mistrial on that ground and to record the examination of the alternate venirepersons cannot be said to have prejudiced defendant.

As outlined earlier, the trooper's testimony, in order to advise the jury as to how the defendant came to be with him, revealed that defendant had been arrested for driving while intoxicated and was being taken to jail. Consequently, the prosecutor's earlier comment did not tell the jury anything the evidence did not later establish. It is a fundamental precept of criminal law that a conviction will not be set aside in the absence of a showing that an error created prejudice. *State v. Peery, ante* p. 556, 391 N.W.2d 566 (1986); *State v. Gregory*, 220 Neb. 778, 371 N.W.2d 754 (1985).

### Denial of Continuances

This, then, brings us to the second issue, which urges that the county court erred in failing to grant the defendant continuances of the jury selection and trial dates.

On May 6, 1985, the very day previously scheduled for jury selection, defendant moved for a continuance largely on the grounds that he had not been given adequate notice that the complaint had been amended with respect to the related drunk driving charge, that he needed time to undertake formal discovery in order to properly prepare for selecting the jury, and that he would be asking the county judge to disqualify himself, as he proposed calling him as a witness in the drunk driving case.

On June 3, 1985, defendant filed a motion to continue the trial set for June 4, and at the same time moved to disqualify the county judge. These motions were overruled on June 4, 1985, at which time defendant was given an opportunity to interview the guard who appeared as a witness and to review the police report, and the trial was held as scheduled.

A motion for continuance is addressed to the court's sound discretion; the trial court's ruling thereon will not be disturbed on appeal absent a showing of an abuse of that discretion. *State v. Fleming, ante* p. 169, 388 N.W.2d 497 (1986); *State ex rel. Douglas v. Schroeder*, 222 Neb. 473, 384 N.W.2d 626 (1986). An abuse of discretion takes place where the trial court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State ex rel. Douglas v. Schroeder, supra.* There is no abuse of discretion by the court in denying a continuance unless it clearly appears that

the defendant suffered prejudice as a result of that denial. *State v. Pierce and Wells*, 215 Neb. 512, 340 N.W.2d 122 (1983).

While defendant assigns as an error the fact that the county judge refused to disqualify himself, he does not discuss that matter. It is therefore a matter with which we do not concern ourselves, for errors not discussed are not considered by this court. *Klug v. Smith, ante* p. 202, 388 N.W.2d 515 (1986); *State v. Schwartz*, 219 Neb. 833, 366 N.W.2d 766 (1985); Neb. Ct. R. of Prac. 9D(1)d (rev. 1986). Consequently, the failure of the county judge to disqualify himself cannot form a basis for an argument that the motions for continuance should have been sustained.

Notwithstanding the fact that by the time of this appeal defendant has had the benefit of knowing precisely what the trial evidence is, he does not tell us how he was prejudiced by having been forced to select a jury before he had completed his discovery or by any shortness of notice as to the amendment of the complaint. While he argues that he only had a half hour to interview the guard and review the police reports, the record reveals that that is "about" the time he had indicated he required. Moreover, he does not explain why discovery was not completed in the month intervening between the selection of the jury and the commencement of trial.

Defendant has shown neither an abuse of discretion by the trial court nor any prejudice resulting from the denials of the continuances.

### Denial of Mistrial

The third issue deals with the county court's refusal to grant defendant's motions for mistrial. The motion made during selection of an alternate juror was resolved by the analysis and resolution of the issue of nonrecording. Defendant's other motion for mistrial was made after the county judge, in ruling on an objection, characterized the trooper's call to the dispatcher as one for help. While the single word, "overruled," would have sufficed to dispose of the objection, the judge's characterization of the evidence cannot be said to have prejudiced defendant. Preble testified that he said he needed help and accepted it when happenstance provided it.

## Sufficiency of the Evidence

The fourth issue questions the sufficiency of the evidence to support the conviction. Defendant's untenable theory is that before the struggle ensued, defendant made no threatening gesture or took any physical act against the trooper and that the trooper simply overreacted to the defendant's taunts. Defendant's arguments ignore the fact the evidence is such that the jury could find defendant resisted the attempts to handcuff him, struggled with Preble, and later continued to resist efforts at being restrained. These acts alone are sufficient to sustain both the State's burden of proof and the subsequent conviction by the jury.

In determining the sufficiency of the evidence to sustain a conviction in a criminal prosecution, this court does not resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact, and its verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Hruza, ante* p. 837, 394 N.W.2d 643 (1986); *State v. West, ante* p. 241, 388 N.W.2d 823 (1986); *State v. Havlat,* 222 Neb. 554, 385 N.W.2d 436 (1986).

## Requested Instruction

The fifth issue rests upon the county court's failure to give the jury an instruction, requested by the defendant, which undertook to define what must be proved to establish the offense charged. The instructions given by the county court properly defined the offense both by setting forth the pertinent statutory language and by listing as an essential element of the crime, as required to be proved by the State, the intentional use or threatened "use of violence, force, physical interference or obstacle." The legally correct substance of defendant's requested instruction was thus given to the jury.

The applicable rule is that a trial court may refuse to give an instruction requested by a criminal defendant where the substance of the request is covered by the instructions actually given. *State v. Wallace, ante* p. 465, 390 N.W.2d 530 (1986).

## Constitutionality of § 28-906(1)

The next issue questions the constitutionality of § 28-906(1). The statute reads as follows:

A person commits the offense of obstructing a peace officer, when, by using or threatening to use violence, force, physical interference, or obstacle, he intentionally obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer or judge acting under color of his official authority.

Defendant argues the foregoing language is unconstitutionally vague in that the terms "violence, force, physical interference, or obstacle" are neither statutorily defined nor readily understandable to the average person. He cites *State v. Valencia*, 205 Neb. 719, 723, 290 N.W.2d 181, 183 (1980), for the proposition that

a crime must be defined with sufficient definiteness and there must be ascertainable standards of guilt to inform those subject thereto as to what conduct will render them liable to punishment thereunder. The dividing line between what is lawful and unlawful cannot be left to conjecture. A crime and the elements constituting it must be so clearly expressed that the ordinary person can intelligently choose in advance what course it is lawful for him to pursue.

*Valencia*, however, continued its discussion as follows:

[I]t is not necessary for a penal statute to be written so as to be beyond the mere possibility of more than one construction. Although a penal statute is required to be strictly construed, it should be given a sensible construction . . . . Moreover, the prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. All the Due Process Clause requires is that the law give sufficient warning that people may conform their conduct so as to avoid that which is forbidden.

*Id*. at 723-24, 290 N.W.2d at 183.

The *Valencia* court thus upheld as sufficiently definite a statute making it an offense to carry a concealed weapon " 'such as a revolver, pistol, bowie knife, dirk or knife with a dirk blade attachment, brass or iron knuckles, *or any other*

*deadly weapon . . . .' "* *Id.* at 720, 290 N.W.2d at 182. The phrase "or any other deadly weapon" was held to be sufficiently definite as to pass constitutional muster.

In *Newton v. State,* 698 P.2d 1149 (Wyo. 1985), the Supreme Court of Wyoming upheld a statute containing words such as "obstructs," "impedes," and "interferes with" against a claim of vagueness. The court found the words to be commonly used and understood by those of ordinary intelligence.

Similarly, the words used in § 28-906(1) are of common usage and are understandable by those of ordinary intelligence. The statute gives sufficient warning of the prohibited conduct so that all who wish to may avoid that which is forbidden. Section 28-906(1) is therefore not vague.

### The Sentence

This brings us to the seventh, and last, issue. Defendant is offended that when he said he would not undertake inpatient treatment as an alcoholic, the judge imposed the maximum sentence permitted for the offense, a Class I misdemeanor. Neb. Rev. Stat. §§ 28-106 and 28-906(2) (Reissue 1985).

While probation is a sentence and not part of a quasi-contract wherein the court offers something which the defendant is free to accept or reject, it is nonetheless entirely proper for a judge to base his or her rejection of probation as a sentencing alternative upon a defendant's presentence statements. *State v. Kinney,* 217 Neb. 701, 350 N.W.2d 552 (1984).

The question, thus, is whether the sentence imposed is excessive. The applicable maxim is that absent an abuse of discretion, this court will not modify a sentence imposed within statutory limits. *State v. Clayburn, ante* p. 333, 389 N.W.2d 314 (1986).

The presentence report demonstrates that defendant has been convicted on two prior occasions for resisting arrest in connection with his driving conduct. Indeed, one of those occasions is the subject of a prior appeal to this court. *State v. Lynch,* 196 Neb. 372, 243 N.W.2d 62 (1976). It is evident that defendant has learned nothing from his prior experiences. There was no abuse of discretion in the sentence imposed.

## DECISION

For the reasons discussed previously, the judgment of the district court is affirmed in each case.

AFFIRMED.