REQUESTED BY: State Senator Carol Hudkins
You have requested our opinion concerning the constitutionality, propriety and necessity of LB 855. In your letter requesting our opinion, you asked us to address three specific concerns related to LB 855: (1) whether the use of the words "intentionally interferes with" is unconstitutionally vague; (2) whether the criminal offense created by LB 855 is already adequately proscribed by Neb. Rev. Stat. § 28-316(3) (Reissue 2002) and; (3) whether LB 855 would create an untenable jurisdictional conflict since it would impose criminal liability for acts that are also subject to a court's civil contempt powers.
PROPOSED LEGISLATION: LB 855 creates the criminal offense of Unlawful Interference with Child Visitation and imposes criminal sanctions for those who commit the acts defined. By its plain language, LB 855 makes it a Class V misdemeanor (first offense) or Class IIIA misdemeanor (subsequent offenses), if a person "intentionally interferes with or deprives" another from exercising their court ordered child visitation rights. Nowhere within LB 855, or Title 28 of the Nebraska Revised Statutes is the "intentionally interferes with or deprives" language specifically defined. However, Neb. Rev. Stat. § 42-364.15
(Reissue 2002), which pertains to enforcement of child visitation orders, contains similarly undefined language in providing a reviewing court with the ability to impose civil sanctions against a parent who "unreasonably withheld or interferes with" court ordered visitation.
While LB 855 prohibits someone from intentionally interfering with or depriving another from exercising their court ordered visitation rights, it does permit a person to undertake such otherwise unlawful acts if: (1) the person had a reasonable belief that the child could be subjected to imminent physical harm; (2) acted with the consent of all parties having a right to custody and visitation; or (3) acted in a manner authorized by law. Within the text of LB 855, it does not address any specific relationship with Neb. Rev. Stat. § 28-316(3) (Unlawful Violation of Child Custody) and only peripherally mentions civil visitation enforcement mechanisms, by providing in subsection (4) that "Proof of conviction under this section is admissible as evidence in a civil action."
The text of LB 855 in its entirety reads as follows:
 Section 1. Section 28-101, Revised Statutes Supplement, 2003, is amended to read:
 28-101. Sections 28-101 to 28-1350 and section 2 of this act shall be known and may be cited as the Nebraska Criminal Code.
Sec. 2.
 (1) A person commits the offense of interference with child visitation if he or she intentionally interferes with or deprives another person of his or her visitation rights with a child in violation of a court order.
 (2) Interference with child visitation is a Class V misdemeanor for the first offense and a Class IIIA misdemeanor for the second or subsequent conviction.
 (3) It is an affirmative defense to prosecution under this section that:
 (a) The person acted in the reasonable belief that he or she was protecting the child from imminent physical harm and the person's actions were a reasonable response to such anticipated harm;
 (b) The person acted with the mutual consent of all persons having a right to custody and visitation of the child; or
 (c) The person acted in a manner otherwise authorized by law.
 (4) Proof of conviction under this section is admissible as evidence in a civil action.
 Sec. 3. Original section 28-101, Revised Statutes Supplement, 2003, is repealed.
 Sec. 4. Since an emergency exists, this act takes effect when passed and approved according to law.
 ANALYSIS I. Whether the use of the language "intentionally interferes with" is unconstitutionally vague.
LB 855 makes it a crime for a person to "intentionally interfere with or deprive" another person from exercising their court ordered child visitation rights. During the Judiciary Committee hearing on LB 855, it was suggested that the phrase "intentionally interfere with," without further explanation or definition, might render the entire statute vulnerable to attack for being unconstitutionally vague. "Intentionally interfere with" is not defined within LB 855 or by any other statute of the Nebraska Criminal Code (Title 28 Nebraska Revised Statutes). It is believed that the drafter(s) of LB 855, included the phrase "intentionally interfere with" because of similar language used in Neb. Rev. Stat. § 42-364.15 (Reissue 2002), pertaining to a civil court's ability to enforce existing child visitation provisions. Neb. Rev. Stat. § 42-364.15 provides:
 In any proceeding when a court has ordered a parent to pay, temporarily or permanently, any amount to the clerk of the district court for the support of a minor child on behalf of such parent the court shall enforce its visitation orders as follows:
 (1) Upon the filing of a motion which is accompanied by an affidavit stating that either parent has unreasonably withheld or interfered with the exercise of the court order after notice to the parent and hearing, the court shall enter such orders as are necessary to enforce rights of either parent including the modification of previous court orders relating to visitation. The court may use contempt powers to enforce its court orders relating to visitation. The court may require either parent to file a bond or otherwise give security to insure his or her compliance with court order provisions. (Emphasis Added).
 (2) Costs, including, reasonable attorney's fees, may be taxed against a party found to be in contempt pursuant to this section.
As N.R.S. § 42-364.15 indicates, a custodian of minor children can be sanctioned if he or she "unreasonably withheld or interferes with" another person's court ordered visitation rights. However, as with the phrase "intentionally interfere with," "unreasonably withheld or interferes with" is not defined by statute nor been subjected to appellate review or interpretation. Therefore, for us to arrive at a reasoned opinion on whether the "intentionally interfere with" language of LB 855 will pass constitutional muster we must look to additional sources for guidance.
According to Nebraska case law, the "void-for-vagueness doctrine" requires that a statute define a criminal offense with a sufficient amount of definiteness that ordinary people can understand what conduct is prohibited and the language it uses does not encourage arbitrary and discriminatory enforcement. State v. Hookstra, 10 Neb. App. 199,630 N.W.2d 469 (2001). The test for determining whether a statute is vague is whether it forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and may differ as to its application. State v. Irons, 254 Neb. 18,574 N.W.2d 144 (1998). In State v. Lynch, 223 Neb. 849, 394 N.W.2d 651
(1986), the Nebraska Supreme Court held that the dividing line between what is lawful and unlawful cannot be left to conjecture. The crime and elements constituting it must be so clearly expressed that an ordinary person can intelligently choose in advance what course is lawful for him to pursue. Lynch at 223 Neb. 859, 394 N.W.2d 661.
In Lynch, the Court was asked to review whether Obstruction of Justice as defined by Neb. Rev. Stat. § 28-906(1), was unconstitutionally vague because it used terms such as, "violence, force, physical interference, or obstacle." In finding that the use of such terms did not render N.R.S. § 28-906(1) unconstitutionally vague, the Supreme Court declared that it is not necessary for penal statutes to be written so as to be beyond mere possibility of more than one construction and although a penal statute is to be strictly construed, it should be given a sensible construction. State v. Lynch,223 Neb. 860, 394 N.W.2d 662. According to Lynch, the prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision because due process only requires that a statute give sufficient warning, so that one may conform his or her conduct to avoid that which is forbidden. Id. . In this instance, the Court found that words such as violence, force, physical interference or obstacle were sufficiently understandable by those of ordinary intelligence and as a result did not render the Obstruction of Justice statute unconstitutionally vague. State v. Lynch,223 Neb. 860, 349 N.W.2d 662 (1986).
Similarly, in State v. Sullivan, 189 Neb. 465, 203 N.W.2d 169
(1973), the Nebraska Supreme Court declared a statute prohibiting the Willful Refusal to Leave Property of an Educational Institution Upon Request not unconstitutionally vague even though it included the undefined phrase, "unreasonably interferes with or obstructs." According to the Court in Sullivan, the terms "obstruct" and "unreasonably interfere" plainly require no guessing at their meaning. Sullivan at189 Neb. 466, 203 N.W.2d 170. Both terms are widely used and well understood and consequently sufficiently warn about the conduct that is proscribed. Id.
While Nebraska courts have not been asked to evaluate whether the phrase, "intentionally interferes with" would render a statute unconstitutionally vague, we believe that the cases recited above suggest that it would not. Throughout the Nebraska Criminal Code, there are a number of statutes that subject those who interfere with the performance of various duties imposed by law to criminal liability. Among those not previously mentioned are; Accessory to a Felony, Neb. Rev. Stat. §28-204 (Reissue 2002) and Interference with a Fireman, Neb. Rev. Stat. § 28-908 (Reissue 2002). While both of these statutes make it unlawful for one to "interfere" with the lawful exercise of a specific function, just as LB 855, neither contains a more specific definition, or for that matter, been scrutinized as being unconstitutionally vague.
Even though the courts have routinely found the undefined use of the word "interfere(nce)" clearly understandable by those of ordinary intelligence, we would be remiss not to at least consider the historical frequency with which the word has been a source of attack. While the judiciary has routinely upheld statutes using the "interfere(nce)," language there is no guarantee that this trend will continue into the future, especially when considering the entirely new and different context in which the word is used in LB 855. As a matter of course, the word "interfere(nce)" has traditionally been used in statutes that proscribe persons from interfering with governmental operations, rather than activities of ordinary citizens. As a result it is possible that the courts will look upon the "interference" prohibited by LB 855, differently than the "interference" used in other statutes because it pertains to interfering with an ordinary citizen's conduct rather than a governmental entity's.
As a final consideration, we should not overlook the statutes passed in other states that have made it a crime to interfere with child visitation and the words they have used to define the offense. Virtually every State that has enacted such a law has modeled their statute after the one pioneered by Illinois. Upon our inspection, we can find no other State that has used language comparable to the "intentionally interfere with" language of LB 855.
For instance, in Illinois, the statute reads as follows: "Every person who detains or conceals a child with the intent to deprive another person of his or her rights to visitation shall be guilty of unlawful visitation interference." In Georgia, "a person commits interference with visitation when person intentionally and willfully refuses to allow lawful visitation." And finally in New Jersey, "a person commits interference with visitation . takes, detains, entices or conceals a minor child from the other parent in violation of the custody order." In many of the statutes surveyed, definitions were provided for words that could potentially be problematic, such as "detains" as in Illinois or "lawful visitation" in the Georgia statute.
Thus, while it appears that the use of the phrase "intentionally interfere" would in all likelihood not render LB 855 unconstitutionally void for vagueness, it may be prudent to consider adding a definition for this phrase or to at least consider replacing the phrase altogether, with language used in similar statutes from other states, that may offer a diminished risk of being attacked under the void-for-vagueness doctrine and possibly found to be unconstitutional.
 II. Whether the acts proscribed by LB 855 are already prohibited by Neb. Rev. Stat. § 28-316(3) (Reissue 2002).
According to your letter, it was suggested during the public hearing on LB 855 that the creation of an offense prohibiting Interference with Child Visitation was unnecessary because such conduct is already proscribed under Neb. Rev. Stat. § 28-316(3) (Reissue 2002). N.R.S. § 28-316(3), delineates the crime of Violation of Custody, and provides in its entirety that:
 (1) Any person, including a natural or foster parent, who, knowing that he has no legal right to do so or, needless in that regard, takes or entices any child under the age of eighteen years from the custody of its parent having legal custody, guardian, or other lawful custodian commits the offense of violation of custody.
 (2) Except as provided in subsection (3) of this section, violation of custody is a Class II misdemeanor.
 (3) Violation of custody in contravention of an order of any district or juvenile court of this state granting the custody of a child under the age of eighteen years to any person, agency or institution, with the intent to deprive the lawful custodian of the custody of such child, is a Class IV felony.
Based upon our review, the conduct proscribed by LB 855 is vastly different than the acts prohibited by N.R.S. § 28-316(3) for the simple reason that custody and visitation are not interchangeable. Typically, custody deals with the permanent disposition of a child, whereas visitation typically deals with a temporary departure from a child's permanent disposition.
Frequently, custody is given to one parent and visitation rights are given to the non-custodial parent. However, on occasion custody may be given to a non-parent or institution and visitation will be given to the child's natural, adoptive or step parents or grandparents. LB 855 is clearly designed to prevent the custodial parent, guardian or institution from intentionally interfering with or depriving someone from exercising their child visitation rights and does not prohibit conduct by someone who deprives a custodian from exercising their rights. In the alternative, N.R.S. § 28-316(3) prohibits a person from taking or enticing a child under the custody of another from their care and does nothing to prohibit a custodian from interfering with the visitation rights given to a non-custodial parent or grandparent.
Upon inspection of the legislative history and plain meaning of N.R.S. § 28-316(3), it is abundantly clear that it is solely designed to inhibit and discourage non-custodial parents from parental abduction or kidnapping and is not meant to apply to situations where a custodian prevents a non-custodian from exercising their limited visitation rights. Therefore, since LB 855 seeks to regulate conduct not considered or covered by the acts prohibited by N.R.S. § 28-316(3), it is difficult to see how LB 855 could be deemed as duplicative or unnecessary.
 III. Whether LB 855 would create an untenable jurisdictional conflict between criminal and civil courts.
Upon initial inspection it would seem that LB 855 would not create a jurisdictional conflict between criminal and civil processes. Throughout Nebraska jurisprudence there are a number of activities that are subject to both criminal and civil sanction. For instance, failure to pay child support or violations of a child custody order can be sanctioned by a court under its civil contempt powers as well as prosecuted by the State as a criminal offense. While it may be impractical, inefficient or duplicative to pursue both a civil contempt and criminal sanction for an individual offense there appears to be no double jeopardy or other legal obstacle to prohibit such an effort.
Under Nebraska law, civil contempt is designed to provide a court with the ability to enforce its order. It is not a punitive sanction but is meant to serve as a device aimed at giving a non-compliant party with the opportunity to rehabilitate themselves for past failures to conform with the standards set forth in the court's order. In fact, under existing Nebraska law, a court must give a non-compliant party with the opportunity to purge themselves of their violations before facing the possibility of incarceration or monetary sanction. For example, if a party is ordered to pay child support and fails to make these payments in a timely or satisfactory manner, the court that originally ordered child support must give the non-compliant party with the opportunity to conform with the terms of the order and make reparations for past failures to comply with the order before utilizing its civil contempt powers to impose any fine or term of imprisonment.
In those cases where a non-compliant party refuses to purge themselves and a court is forced to impose a civil contempt sanction, these sanctions are not viewed as criminally punitive but as a measure to preserve the court's integrity and prevent future degradation of its authority. Conversely, a prosecution against one who willfully fails to abide by the terms of a court's order is predicated upon the need to punish and deter the offender and the public-at-large from engaging in similar misdeeds in the future. In a prosecution, preservation of the court's integrity, respect for its authority and providing an offender with the opportunity to make amends for past misdeeds, is of limited concern. Thus, the distinct and individual purposes underlying criminal prosecution and civil contempt sanctions provide the evidence necessary to support an effort to pursue sanctions under either one or a combination of the two options.
As a final note on this topic it should be pointed out that existing Nebraska law provides the State with the opportunity to prosecute a party who intentionally and willfully fails to comply with a court order for criminal contempt. Neb. Rev. Stat. § 25-2121 (Reissue 1995) provides:
 Every court of record shall have power to punish by fine and imprisonment, or by either, as for criminal contempt, persons guilty of (1) disorderly, contemptuous, or insolent behavior towards the court, or any of its officers in its presence; (2) any breach of the peace, noise, or other disturbance tending to interrupt its proceedings; (3) willful disobedience of or resistance willfully offered to any lawful process or order of said court; (4) any willful attempt to obstruct the proceedings, or hinder the due administration of justice in any suit, proceedings, or process pending before the courts; or (5) contumacious and unlawful refusal to be sworn or affirmed as a witness, and when sworn or affirmed, refusal to answer any legal and proper interrogatory.
Contempt proceedings are in a nature to be deemed criminal and governed by the same rules. Gentle v. Pantel Realty Co. 120 Neb. 620,234 N.W. 579 (1926). In addition, Neb. Rev. Stat. § 25-2123 (Reissue 1995) provides:
 Persons punished for contempt preceding provisions shall nevertheless be liable to indictment, if such contempt shall amount to an indictable offense; but the court before which the conviction shall be had may, in determining the punishment, take into consideration the punishment before inflicted in mitigation of sentence.
Though prosecutions for criminal contempt are extraordinarily rare, there is a notable absence of any cases that would indicate an untenable jurisdictional conflict between the criminal and civil contempt processes. This would seem to provide additional support for the notion that a court's civil contempt powers and LB 855 could co-exist without significant legal impediment. Although a simultaneous prosecution for criminal contempt and Interference of Child Visitation would likely be barred by double jeopardy concerns, no such concerns would be created where a court seeks to exercise its civil contempt powers for the same occurrences prosecuted by the State under the terms of LB 855.
 CONCLUSION
Based on the foregoing, we believe that LB 855 does not contain unconstitutionally vague language, nor does it create a jurisdictional conflict between the criminal and civil process, nor is it usurped or superseded by existing state law(s).
Sincerely,
 JON BRUNING Attorney General
 Corey M. O'Brien Assistant Attorney General
Approved:
________________________ Attorney General